By the Court
 

 (Kinkade, J.).
 

 This is a proceeding in error to reverse a finding and order made by the public utilities commission against the plaintiff in
 
 *212
 
 error. The plaintiff in error will be referred to as the gas company, and the defendant in error as the commission. Dates are not important, and will be omitted.
 

 The gas company filed an application with the commission, requesting the commission to approve and authorize, an issue by the gas company of certain stocks and securities, which the gas company desired to place upon the market for sale. The commission, after a full hearing upon evidence, refused to grant the application, and assigned as a reason for its refusal, among others, that the gas company was not a public utility, and for that reason alone the commission had no jurisdiction to consider the application. The gas company filed a motion for rehearing and for leave to file an amended application. Upon further consideration of the case, the commission rejected the amended application, and denied a rehearing of the original application, for the reason before assigned, that is to say, that the gas company was not a public utility. The gas company prosecutes error to this court.
 

 There is only one question here for our consideration, and that is whether the contemplated operation of the plant owned by the gas company is in fact one that brings the gas company under the jurisdiction of the public utilities commission.
 

 The gas company proposes to sell artificial gas by meter measure to parties who live in the suburbs of cities or near thereto, for light, heat and other purposes. The patrons to be so supplied reside so far away from gas lines or mains supplying the people who reside in the city that it is not practicable, within reasonable cost, to procure gas from the city lines. The gas company believes that there are a great many people residing near every city who will promptly take and pay for the gas which the gas company proposes to furnish. The gas is to be manufactured in the immediate neighborhood where it is to be
 
 *213
 
 used. It is made by vaporizing a volatile oil which is kept in a tank buried at some convenient point on the lot of one of a group to be supplied from a particular tank. The number of patrons in any group varies according to conditions. The gas is piped to each patron from the group tank by pipes laid underground, as may be necessary, across the lots of the members of the group. Each buried tank is connected with an electric motor nearby which furnishes the power to make and distribute the gas. Each patron has a separate meter. The patrons pay for piping their own house or other building, and also pay a reasonable part of the cost of installing the plant to supply the group. The entire plant belongs exclusively to the gas company. The gas company, at its own expense, keeps the buried tank supplied with the volatile oil, and sells the patron metered gas only. The gas company selects its own patrons, makes its own rate, and determines whatever contractual relations are necessary to make the enterprise a financial success. No public property is entered upon; no streets or highways are to be crossed or incumbered by poles or pipes of the gas company. Territory can be served only where electric current is available for use in running the motor at the tanks. Oil supplied for tanks is furnished by the gas company by the use of trucks traveling over public streets and alleys.
 

 It will be seen by the foregoing statement of facts just what the operation is which the gas company intends to go forward with. It is conceded by counsel for the commission that the question herein presented is a close one, and that much can be said on either side. It is also conceded by counsel on both sides that it is well-nigh impracticable, if not wholly so, to write a definition of a public utility which may be used as a measure with respect to all other situations that may arise. The question is not so much what is a public utility, as it is, do the facts attending the operation here constitute a public utility?
 

 
 *214
 
 Our attention is called by tbe gas company to the fact that this is an application made by the gas company itself to the commission to find that the gas company is a public utility, and we are cited to cases in which it has been held that a party holding himself out as a common carrier will in most instances be adjudged as such. And it is said here that this willingness on the part of the gas company to be adjudged a public utility is an important matter for consideration, and we think that is true. However, it may also be true that important considerations exist which might very readily induce the gas company to have itself adjudged as a public utility. For instance, it might add very materially to the value, in the minds of investors, of the stocks and securities to be marketed by the gas company to have it known that that company was clearly within the jurisdiction of the commission, which must supervise and approve any securities placed upon the market. And it might also be recognized that this public utility in its operations could not be unjustly interfered with by competition, and that the matter of competition was one that would be regulated by the commission. We think a protection against unreasonable and ruinous competition might be highly desirable for the gas company, and so desirable as to much more than counterbalance any possible restrictions upon the freedom of its action with regard to its securities or otherwise, which might arise by reason of its being adjudged such public utility.
 

 If any mercantile establishment, selling its goods to the public in general, could have its business adjudged as falling within the jurisdiction of the commission, and thereby eliminate, or at least greatly diminish, competitors from unfairly coming into a determined field, evidently all distinction between mercantile operations, carried on by persons, partnerships, corporations or associations, and public utilities, as now gen
 
 *215
 
 erally recognized by law, would promptly disappear, and the commission would, quite as promptly, be completely swamped in any effort the commission might make to take care of the situation thus arising, and the general provisions of the public utilities law would become broadened far beyond anything that the Legislature ever had in mind in the enactment of the public utilities statutes.
 

 This court has several times announced that the Legislature cannot by a mere declaration create one a common carrier whose business is in fact not that of a common carrier. We have held that where one devotes a part of the time to operating a truck upon the highway for his own individual business, and the balance of the time operates the truck as a common carrier, he must be held to be a common carrier, and subject to the jurisdiction of the public utilities commission. And in the same connection, this court has held that when one is not operating any portion of his time as a common carrier, but is serving specific patrons under separate contracts with himself, and not holding himself out to take the business of all who come, he cannot be held to be a common carrier. .
 

 It is said by counsel for the commission that there are other companies operating throughout the state along the same lines that are to be pursued by the gas company in this case, and that none of those individuals, associations or corporations have heretofore been held to be public utilities.
 

 We reach the conclusion on the facts that are not in dispute that the operation contemplated by the gas company here is simply a merchandising operation, and that it cannot be held to be á public utility. In other words, the finding and order made by the commission must be affirmed.
 

 ^ 7
 
 Order affirmed.
 

 JoNes, Matthias, Day, AlleN and StepheNSON, JJ., concur.