Public Utilities Commission,
No. 5464.

### ALLIED NEW HAMPSHIRE GAS COMPANY

*v.*

### TRI-STATE GAS & SUPPLY CO. & *a.*

Argued May 3, 1966.
Decided July 15, 1966.

*Sulloway, Hollis, Godfrey & Soden* and *Arthur W. Mudge II* ( *Mr. Mudge* orally ), for the plaintiff.

*Michael & Wallace* and *Thomas W. Porter* ( *Mr. Porter* orally ), for the defendant.

*George S. Pappagianis*, Attorney General and *George L. Manias*, Assistant Attorney General ( *Mr. Manias* orally ), for the Public Utilities Commission.

Kenison, C. J. The issue in this case is whether the defendant's operations in the distribution and sale of liquefied petroleum gas renders it a public utility ( RSA 362:2 ) subject to the jurisdiction of the Public Utilities Commission. RSA 374:22. " This question is not, a constitutional one nor one of public policy but rather one of statutory interpretation. " *Blair* v. *Manchester Water Works*, 103 N. H. 505, 506.

In pertinent part RSA 362:2 reads as follows: " The term public utility shall include every corporation . . . owning, operating or managing . . . any plant or equipment or any part of the same . . . for the manufacture or furnishing of light, heat, power or water for the public . . . or owning or operating any pipe line, including pumping stations, storage depots and other facilities, for the transportation, distribution or sale of gas, crude petroleum, refined petroleum products, or combinations thereof. . . . " This statute delegates broad regulatory powers to the Public Utilities Commission ( *Opinion of the Justices*, 84 N. H. 559; *State* v. *New Hampshire Gas & Electric Co.*, 86 N. H. 16 ) but its powers are necessarily circumscribed by the purposes which the statute seeks to accomplish. *Claremont &c. Co.* v. *Mills*, 92 N. H. 468; *Blair* v. *Manchester Water Works*, 103 N. H. 505.

The plaintiff points to the literal words of the statute which include the "furnishing of light, heat, power" as indicating the defendant is a public utility. This language, in isolation, is broad enough to include those who distribute coal, wood, gasoline, oil or liquefied petroleum gas in bottles, cylinders, drums or tanks. However, the Public Utilities Commission has never regulated such activities under the statute and has confined its regulatory control to pipeline companies and gas companies using a system of underground mains for the distribution of gas to an entire community or area. The statute has been amended on two occasions and no attempt has been made by the Legislature to include these unregulated activities as public utilities under the statute. We agree with the administrative interpretation placed on the quoted words of the statute by the Public Utilities Commission as reflecting the legislative intent not to include in the category of a public utility the sale and distribution of liquefied petroleum gas in the manner disclosed by the evidence in this case.

The plaintiff argues that the 1941 amendment ( Laws 1941, 197:1 ) of the definition of public utility encompasses the defendant as a public utility. That amendment added to the definition of public utility the following phraseology: " owning or operating any pipe line, including pumping stations, storage depots and other facilities, for the transportation of crude petroleum and refined petroleum products or combinations thereof. " As appears from the preamble to this amendment its purpose was to ·enable interstate pipelines to extend the bulk transportation of petroleum

products into the state and to grant them the power of eminent domain. RSA 371:1, 15. The 1951 amendment (Laws 1951, 203:9, par. 2) added "gas" to the list of pipeline products in the definition. Here again, the legislative purpose was to regulate the bulk distribution of natural gas by pipeline companies from its source to local distribution points. Neither of these amendments was aimed at the sale and distribution of liquefied petroleum gas. Nor was RSA 362:2 intended to apply to the defendant whose pipeline was fifty feet from a small, single storage tank on the private property of one owner to a single structure containing four apartments. *Paramount Gas Utilities Co.* v. *Public Utilities Commission*, 125 Ohio St. 211; *Re Oatman*, 78 PUR (NS) 334 (1948); *Pennsylvania Public Utility Commission* v. *Solgas*, 38 PUR (NS) 30 (1940); Welch, Cases and Text on Public Utility Regulation 44 (1961).

The plaintiff places some reliance upon a decision of the Public Service Commission of Missouri, decided October 13, 1964 (*Suburban Gas Company* v. *Geldbach Petroleum Co.*). In that case, however, the statute defining a public utility specifically included "artificial gas" as provided in *s.* 386.250 of the Revised Statutes of Missouri. See *Re: Geldbach Petroleum Co.*, 56 PUR 3d 207, 218 (1965) (Mo. PSC 1964). In *Re: Wisconsin Rapids Gas Co.*, PUR 1933 C 375 (1933) the propane gas service involved an entire city and several square miles of surrounding territory. *Re Petrolane-Wyoming Gas Service*, 50 PUR 3d 262, 264 (Wyo. PSC 1963) decided that a liquefied petroleum gas plant and distribution system servicing an entire municipality by underground pipes was a public utility under the Wyoming Public Utility Act. All of these cases are distinguishable from the factual situation involved in the present case.

The plaintiff has submitted certain policy arguments which bear on the wisdom of regulating the sale and distribution of liquefied petroleum gas but these are matters peculiarly within the province of the Legislature.

We know there has been a continued growth of the liquefied petroleum gas industry, that there is competition between it and the natural gas companies but where and when the former should be classified as public utilities requires a legislative declaration to that effect. See Ackley, The Changing Face of the LPGas Industry, 76 Public Utilities Fortnightly (no. 8) 44 (1965);

310

*Gable* v. *Tennessee Liquefied Gas Co.*, 45 Tenn. App. 674, 325 S.W. 2d 657; Annot. 17 A.L.R. 2d 888, *s.* 1. At the present time the defendant and other dealers of liquefied petroleum gas are regulated only as to safety aspects by the rules and regulations of the New Hampshire Board of Fire Control governing "storage and transportation of liquefied petroleum gas." This 85-page booklet of regulations is promulgated under the authority of RSA 153:4, 5. See *State* v. *Thompson*, 101 N. H. 208. These regulations, of course, do not change the status of liquefied petroleum gas dealers from that of a private business to a public utility. See *Hall* v. *Dexter Gas Co.*, 277 Ala. 360; *Chronicle &c. Pub. Co.* v. *Attorney-General*, 94 N. H. 148, 153.

Since the defendant is not a public utility within the meaning of RSA 362:2 the order is

*Appeal dismissed.*

All concurred.