DOME PIPELINE CORPORATION v PUBLIC SERVICE
COMMISSION

Docket No. 100809. Submitted August 4, 1988, at Lansing. Decided
April 3, 1989. Leave to appeal applied for.

Dome Pipeline Corporation, which under license from the Federal
Energy Regulatory Commission operates the Eastern Delivery
System and the Cochin Pipeline System, pipeline systems used
in transporting liquid hydrocarbons such as ethane, ethylene,
propane and butane through parts of the United States, includ-
ing Michigan, and Canada, applied for authorization by the
Public Service Commission to construct a pipeline connecting
its pipeline systems to the Carlton, Michigan, glass manufactur-
ing plant of Guardian Industries Corporation for the purpose of
delivering liquid ethane from sources outside of Michigan for
Guardian Industries' exclusive use. The National Steel Corpora-
tion supported the application and the Michigan Consolidated
Gas Company and the Michigan Gas Utilities Company opposed
it. The PSC denied Dome Pipeline's application, ruling that
pursuant to the public utility act, 1929 PA 69; MCL 460.501 *et
seq.*; MSA 22.141 *et seq.*, Dome Pipeline must first obtain from
the PSC a certificate indicating that public convenience and
necessity requires the construction of the proposed project.
Dome Pipeline, Guardian Industries and National Steel ap-
pealed to the Court of Appeals, claiming that the public utility
act does not apply to the proposed pipeline since the act only
applies to new gas or electric projects by public utilities.
Appellants contended that liquid ethane is not a gas and that
Dome Pipeline is not a public utility.

The Court of Appeals *held:*

1. The liquid ethane involved in this case, which is in the
form of gas when taken from the ground and must be con-
verted back to gas before its use by Guardian Industries, is a
"gas" for purposes of the public utility act.

2. Under the proposed project, Dome Pipeline will be a

REFERENCES

Am Jur 2d, Public Utilities §§ 1, 9-15.

Factors properly considered by Federal Power Commission upon
application for certificate of public convenience and necessity
under Natural Gas Act. 5 L Ed 2d 1000.

carrier for hire by virtue of transporting ethane bought by Guardian Industries from various suppliers. Thus, Dome Pipeline may properly be considered a public utility for purposes of the public utility act. Additionally, because Dome Pipeline affects the public interest in view of its virtual monopoly over the supply of ethane, the fact that Guardian Industries will be the only customer served by the proposed pipeline project is not significant in determining whether Dome Pipeline can be considered a public utility in this case.

3. The question whether the assertion of jurisdiction by the PSC pursuant to the public utility act is an unlawful interference with interstate commerce need not be addressed until the constitutional and interstate commerce implications of jurisdiction by the PSC become clear when the certificate of public convenience and necessity is sought and, if granted, when Dome Pipeline proposes a rate structure for its service to Guardian Industries.

4. Regulation by the PSC in this case, which only extends to the transportation of ethane within Michigan, does not infringe upon interstate commerce and is therefore not preempted by the Interstate Commerce Act.

Affirmed.

PUBLIC UTILITIES — GAS PIPELINES — PUBLIC SERVICE COMMISSION.

A corporation which operates a pipeline system over which liquid ethane is transported interstate may be considered a public utility under Michigan's public utility act where the corporation proposes to construct a pipeline to connect its system to a single industrial facility in Michigan; under the act, the corporation, prior to construction, must obtain from the Michigan Public Service Commission a certificate indicating that public convenience and necessity requires the construction of the proposed pipeline (MCL 460.501 et seq.; MSA 22.141 et seq.).

*Conner, Harbour & Thomas, P.C.* (by *Pat C. Conner* and *Francis E. Bentley*), for Dome Pipeline Corporation.

*Alan L. Schlang,* for Guardian Industries Corporation.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Robert B. Webster* and *Douglas H. West*), and *Babst, Calland, Clements & Zomnir, P.C.* (by *Richard M.*

*Zomnir*), of Counsel, for National Steel Corporation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey* and *Henry J. Boynton,* Assistant Attorneys General, for Public Service Commission.

*Foster, Swift, Collins & Coey, P.C.* (by *William K. Fahey*), and *David P. Van Note* and *Daniel L. Schiffer,* for Michigan Consolidated Gas Company.

*Honigman, Miller, Schwartz & Cohn* (by *Daniel J. Demlow, Ronald E. Christian* and *Frederick M. Baker, Jr.*), and *William F. Braeuninger* and *John E. Palincsar,* for Michigan Gas Utilities Company.

Before: DANHOF, C.J., and CYNAR and G. R. DE-NEWETH,\* JJ.

G. R. DENEWETH, J. Plaintiffs appeal as of right from an order of the Michigan Public Service Commission denying Dome Pipeline's application for authorization to construct a lateral pipeline to connect Dome's existing pipelines to Guardian Industries Corporation for the purpose of making deliveries of liquid ethane.

Plaintiff Dome Pipeline Corporation is a Delaware corporation, authorized to transact business in Michigan, which is a wholly owned subsidiary of Dome Petroleum Corporation, a North Dakota corporation, which is in turn wholly owned by Dome Petroleum, Ltd., a Canadian corporation. Dome Pipeline owns and operates the Eastern Delivery System (EDS), a liquid hydrocarbon pipeline system, in the United States, and is part owner, and sole operator, of those portions of the

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

Cochin Pipeline System located within the geographical boundaries of the United States.

The Dome Pipeline system, or those portions here in question, consists of two 12¾-inch liquid hydrocarbon pipelines. The EDS runs from Marysville, Michigan, to Port Huron, across the international border to Sarnia, Ontario, then to Windsor, and then to Green Springs, Ohio. The Cochin Pipeline extends from Fort Saskatchewan, Alberta, to Sarnia, traversing North Dakota, Minnesota, Iowa, Illinois, Indiana, Ohio, Michigan, and Ontario. Through the majority of the Michigan routes, the two lines are parallel and occupy the same right of way. The two pipelines join at the Riga pump station in Lenawee County, proceed northeast to Detroit, then cross into Canada under the Detroit River.

From their inception, the Cochin and EDS systems have been used only for the transportation of material in liquid state, such as ethane, ethylene, propane and butane. Under Dome's Federal Energy Regulatory Commission tariffs, materials in other than liquid state may not be transported in this pipeline.

Plaintiff Guardian Industries is a Michigan corporation which operates a large glass manufacturing plant in Carlton, Michigan. The glass-making process requires large quantities of clean burning fuel. Guardian agreed to purchase liquid ethane from Dome Petroleum, as this represented a significant savings over the price charged by the local gas company, Michigan Gas Utilities Company, operating under PSC approved tariffs. Subsequently, Guardian arranged to purchase liquid ethane from other out-of-state producers.

Plaintiff Dome Pipeline was to transport the liquid ethane purchased by Guardian. Dome Petroleum would be acting as the agent for the five out-

of-state suppliers. Dome petitioned the PSC for permission to construct the necessary lateral pipeline to Guardian Industries to allow for delivery of ethane in its liquid state. Special facilities are needed for receiving the gas and converting it to burnable form, since it arrives under extreme pressure, far different from ethane in the gaseous state in which this commodity is typically delivered to retail customers by utility companies. Dome contended that it was merely transporting gas already purchased by Guardian Industries from Guardian's own out-of-state suppliers, and that this transportation service was not subject to regulation by the PSC. The PSC, however, held that transportation of natural gas, whether in liquid or gaseous form, is subject to commission jurisdiction. The PSC determined that Dome Pipeline must first obtain a certificate of public convenience and necessity to transport the ethane.

The issue presented is whether an interstate common carrier of liquid hydrocarbons is a gas public utility under the public utility act, 1929 PA 69, MCL 460.501 *et seq.*; MSA 22.141 *et seq.*, which must first obtain a certificate of public convenience and necessity before transporting liquid ethane to an industrial customer in Michigan. Plaintiffs maintain that the PSC has jurisdiction only if Dome Pipeline is a utility transporting gas for public use.

Plaintiffs first argue that liquid ethane is not a "gas" for purposes of the public utility act. Plaintiffs base this argument on definitions of "gas" found in the petroleum act, 1929 PA 16, MCL 483.1 *et seq.*; MSA 22.1341 *et seq.*, the natural gas act, 1929 PA 9, MCL 483.101 *et seq.*; MSA 22.1311 *et seq.*, and the public utility commission act, 1919 PA 419, MCL 460.51 *et seq.*; MSA 22.1 *et seq.* We find it unnecessary to review the definitions of

"gas" found in these acts because we agree with defendants that the public utility act is not in pari materia with the other acts. Statutes are not in pari materia if their scope and aim are distinct and unconnected. *Palmer v State Land Office Board,* 304 Mich 628; 8 NW2d 664 (1943). We find that the psc's decision that ethane is a gas, in this statutory context, is correct.

Plaintiffs also argue that ethane in its liquefied form and as handled, transported, and sold commercially is not within the common understanding of the term "gas." Physically and thermodynamically, ethane under pipeline conditions behaves as a liquid.

The psc argues that the more salient question is the physical characteristics and use of the product being supplied. Ethane is a gas when taken from the ground and when used.

We find no merit to plaintiffs' argument that the common meaning of the term "gas" in its commercial sense excludes ethane. In *Public Service Comm of the State of New York v FPC,* 177 US App DC 245; 543 F2d 392 (1976), the gas in question was methane, but it had been manufactured from naphtha, a liquid. The court held that it was not natural gas. The psc distinguished this case since the question presented was an interpretation of provisions of the Federal Natural Gas Act, which has no counterpart in Michigan law. The psc felt that the case therefore had no bearing on the Michigan Legislature's understanding of the term "gas" as used in the public utility act. Also, the case is distinguishable because the commodity in question was the result of a chemical transformation rather than a simple change of physical state (as from gas to liquid).

Plaintiffs also cite *Summers Appliance Co v George's Gas Co, Inc,* 244 Ark 113; 424 SW2d 171

(1968) (gas subject to regulation by the Arkansas Public Service Commission did not encompass liquid petroleum gas; thus, liquid petroleum distributors were not public utilities), and *Allied New Hampshire Gas Co v Tri-State Gas & Supply Co, Inc,* 107 NH 306; 221 A2d 251 (1966) (liquid petroleum gas company not subject to regulation as a utility by the New Hampshire Public Utilities Commission). However, in the *Summers Appliance* case, the court was not dealing with liquefied natural gases (LNG) such as ethane, but with liquefied petroleum gases (LPG), butane and propane, which are distributed by truck, not by pipeline. In the *Allied New Hampshire Gas Co* case, the court was also dealing with an LPG, namely propane. The court there noted that historically *its* public service commission had never regulated businesses distributing propane by truck. Thus, both of these cases are clearly distinguishable. We find that the ethane at issue here constitutes a "gas" for purposes of the public utility act.

We next address plaintiffs' argument that Dome Pipeline cannot be considered a public utility because it does not and will not provide a service to the public. Plaintiffs cite *Michigan Consolidated Gas Co v Sohio Petroleum Co,* 321 Mich 102; 32 NW2d 353 (1948). We find the case distinguishable on two grounds. First, the Court there held that, in order to be a carrier for hire, a person must be equipped for carrying the property of other persons for compensation in some form. In that case, Sohio Petroleum Company was merely gathering and transmitting gas owned by it from its own wells. In the instant case, however, Dome Pipeline proposes to transport gas purchased by Guardian Industries, to which it will, on paper, have title, and which previously belonged to five major multinational gas companies. Thus, Dome Pipeline pur-

ports to be transporting the property of other persons, and is thus a carrier for hire.

Second, in the *Sohio* case, the Court held that a corporation which merely produced natural gas from its own wells, and piped and sold it to a single contract purchaser, was not engaged in the business of "buying and selling" natural gas, since it merely sold but did not buy. Again, in the instant case, Dome Pipeline is not piping and selling, to a single contract purchaser, gas produced from its own wells which it merely sells but does not buy. Dome Pipeline has to receive the gas from a separate source. Whether Dome Pipeline takes title to the gas or not, the transportation is the functional equivalent of purchases by Dome Pipeline, followed by resale, with the profit margin based on handling charges for transportation. The substance, not the form, of the transaction controls.

Plaintiffs rely on several out-of-state cases supporting the idea that delivery of gas, whether in liquid form or otherwise, to selected large customers does not constitute supplying the commodity for "public use." *Public Utilities Comm v Colorado Interstate Gas Co,* 142 Colo 361; 351 P2d 241 (1960); *Mississippi River Fuel Corp v Illinois Commerce Comm,* 1 Ill 2d 509; 116 NE2d 394 (1953); *Wilhite v Public Service Comm,* 150 W Va 747; 149 SE2d 273 (1966); *Llano, Inc v Southern Union Gas Co,* 75 NM 7; 399 P2d 646 (1964); *Coastal States Gas Transmission Co, Inc v Public Service Comm,* 524 So 2d 357 (Ala, 1988). We note that the cases cited by plaintiffs represent the minority viewpoint.

The majority of courts which have addressed the question have held that sales to even a very few selected customers constitutes "service to the public" and renders the company a gas utility subject

to regulation. See *State Commerce Comm v Northern Natural Gas Co,* 161 NW2d 111 (Iowa, 1968) (93 nondomestic retail customers and 500 farm taps); *Cities Service Gas Co v State Corporation Comm,* 222 Kan 598; 567 P2d 1343 (1977) (5 municipal customers); *Public Service Comm v Panhandle Eastern Pipeline Co,* 224 Ind 662; 71 NE2d 117 (1947), aff'd 332 US 507; 68 S Ct 190; 92 L Ed 128 (1947) (one industrial customer); *Northern Natural Gas Co v Public Service Comm,* 292 NW2d 759 (Minn, 1980) (34 Industries and 2,100 farmers); *Dairyland Power Cooperative v Brennan,* 248 Minn 556; 82 NW2d 56 (1957) (service to members only); *Industrial Gas Co v Public Utilities Comm,* 135 Ohio St 408; 21 NE2d 166 (1939) (19 industrial and 12 private customers); *Trico Electric Cooperative, Inc v Corporation Comm,* 86 Ariz 27; 339 P2d 1046 (1959) (smaller number of customers); *Griffith v Public Service Comm,* 86 NM 113; 520 P2d 269 (1974) (one residential subdivision); *Lewandowski v Brockwood Musconetcong River Property Owners Ass'n,* 37 NJ 433; 181 A2d 506 (1962) (one residential subdivision); *Oklahoma ex rel Cartwright v Ordinance Works Authority,* 613 P2d 476 (Okla, 1980) (small number of customers); *In re Petition of South Jersey Gas Co,* 226 NJ Super; 544 A2d 402 (1988), (one customer).

In none of the cases, whether the majority or minority, was the number of customers directly served deemed controlling. However, all the courts in the majority explicitly rejected the Colorado and Illinois decisions on which plaintiffs rely, which are considered the leading cases for that viewpoint. The Colorado and Illinois cases limit the concept of "public utility" to a company which has a legal obligation to serve any member of the public. In rejecting that approach, other courts have noted that is merely one way of defining a

public utility, but that a public utility also embraces any business which is affected with a public interest. As noted by the United States Supreme Court in *Munn v Illinois,* 94 US 113, 126; 24 L Ed 77 (1876):

> Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large.

In *Munn,* the Court held that grain elevators can be regarded as public utilities, subject to regulation, because they are serving a public interest. The decision was based upon the necessity of the service to the community, together with the existence of a virtual monopoly.

In this case, Dome Pipeline is a virtual monopoly. Dome Pipeline's competitors, Michigan Gas Utilities Company and Michigan Consolidated Gas Company, are also regulated monopolies. Dome Pipeline seeks to take advantage of its monopoly position without the bother of laboring under certain restrictions to which its competitors are subjected.

The PSC correctly relied on the decision in *Panhandle Eastern Pipe Line Co v Public Service Comm,* 328 Mich 650; 44 NW2d 324 (1950), aff'd 341 US 329; 71 S Ct 777; 95 L Ed 993 (1951). In that case too, a pipeline company was seeking to avoid regulation with respect to certain select customers and the Michigan Supreme Court held it to be a utility.

Moreover, as Dome Pipeline acknowledges, in 1972 it was granted permission to construct its pipelines under the power of eminent domain. See MCL 483.2; MSA 22.1342 and MCL 483.102; MSA 22.1312. The exercise of the right of eminent do-

main may be enough to constitute a distributor of either gas or electricity a public utility, even though it engages strictly in wholesale and not in retail distribution. *Salisbury & Spencer R Co v Southern Power Co,* 179 NC 18; 101 SE 593; 12 ALR 304 (1919); *People's Natural Gas Co v Public Service Comm,* 279 Pa 252; 123 A 799 (1924); *North Carolina Public Service Comm v Southern Power Co,* 282 F 837; 33 ALR 626 (CA 4, 1922), cert dis 263 US 508; 44 S Ct 164; 68 L Ed 413 (1924). The theory behind these decisions is that the state cannot confer the power of eminent domain to seize private property for private use. The force of that reasoning is fully accepted in Michigan. See *Poletown Neighborhood Council v Detroit,* 410 Mich 616; 304 NW2d 455 (1981); *City of Center Line v Chmelko,* 164 Mich App 251; 416 NW2d 401 (1987).

Thus, we hold that Dome Pipeline is a utility and is transporting gas for public use. Accordingly, Dome Pipeline is not exempt from regulation by the PSC.

Plaintiff's second issue on appeal is that the assertion of jurisdiction by the PSC pursuant to the public utility act is an unlawful interference with interstate commerce. The seminal case in this area is *Arkansas Electric Cooperative Corp v Arkansas Public Service Comm,* 461 US 375; 103 S Ct 1905; 76 L Ed 2d 1 (1983). The *Arkansas Electric* case involved an assertion of jurisdiction by the Arkansas Public Service Commission over the wholesale rates charged by a rural power cooperative to its member retail distributors. The cooperative purchased a significant portion of its power from out-of-state suppliers. Finding no commerce clause impediment to this assertion of state regulation, the Court held:

Applying the *Bruce Church* test [*Pike v Bruce Church, Inc,* 397 US 137; 90 S Ct 844; 25 L Ed 2d 174 (1970)] to this case is relatively simple. The most serious concern identified in *Bruce Church*—economic protectionism—is not implicated here. Compare *Philadelphia v New Jersey,* 437 US 617 [98 S Ct 2531; 57 L Ed 2d 475] (1978), with *Minnesota v Cloverleaf Creamery Co,* 449 US, at 471-472 [101 S Ct 715; 66 L Ed 2d 659]. Moreover, state regulation of the wholesale rates charged by AECC to its members is well within the scope of "legitimate local public interests," particularly considering that although AECC is tied into an interstate grid, its basic operation consists of supplying power from generating facilities located within the State to member cooperatives, all of which are located within the state. Cf. *id.,* at 473, n 17.

\* \* \*

Finally, although we recognize that the PSC's regulation of the rates AECC charges to its members will have an incidental effect on interstate commerce, we are convinced "that the burden imposed on such commerce is not clearly excessive in relation to the putative local benefits." Part of the power AECC sells is from out of state. But the same is true of most *retail* utilities, and the national fabric does not seem to have been seriously disturbed by leaving regulation of retail utility rates largely to the States. Similarly, it is true that regulation of the prices that AECC charges to its members may have some effect on the price structure of the interstate grid of which AECC is a part. But, again, we find it difficult to distinguish AECC in this respect from most relatively large utilities which sell power both directly to the public and to other utilities. It is not inconceivable that a particular rate structure required by the Arkansas PSC would be so unreasonable as to disturb appreciably the interstate market for electric power. But, as we said in our discussion of the pre-emption issue . . . we are not willing to allow such a hypothetical possibility to control this facial

challenge to the PSC's mere assertion of regulatory jurisdiction. [461 US 394-395.]

We find this language controlling in the present case. Here, the PSC has not flatly prohibited Dome Pipeline from constructing the lateral pipeline to directly serve Guardian Industries. Instead, the PSC has held that Dome Pipeline must first obtain a certificate of public convenience and necessity allowing for public service commission regulation. At this point, this Court is presented with merely a facial challenge to the assertion of regulatory jurisdiction. It is premature to determine the constitutional and interstate commerce implications of the manner in which that authority will be exercised until Dome Pipeline seeks the certificate and, if granted, when Dome Pipeline proposes a rate structure for its service to Guardian.

The last issue on appeal is whether the assertion of jurisdiction by the PSC over an interstate common carrier of liquid hydrocarbons is preempted by the interstate commerce act which vests jurisdiction over that common carrier in the Federal Energy Regulatory Commission. Plaintiffs contend that Michigan lacks the authority to regulate the interstate transportation of ethane because the transportation of ethane through the Cochin and EDS systems is subject to FERC regulation.[1] However, the actual interstate transportation of liquefied ethane by Dome Pipeline is entirely unregulated by the PSC in this case. It is only when that

[1] Plaintiffs rely in part on *National Steel Corp v Long,* 689 F Supp (WD Mich, 1988). It was held in *National Steel* that FERC's exercise of authority to regulate interstate commerce delegated to it by Congress under the Natural Gas Act, 15 USC 717 *et seq.,* preempts PSC regulation under 1929 PA 69, MCL 460.501 *et seq.;* MSA 22.141 *et seq.;* of bypass transportation of *natural* gas in interstate commerce to an industrial end user. We note that this case has been appealed to the United States Court of Appeals, 6th Circuit, where a decision is pending.

commodity has "landed" in Michigan, and is proposed to be distributed intrastate, that the PSC purports to exercise its regulatory authority. This is no infringement whatsoever of the commerce power. *Panhandle Eastern Pipe Line Co, supra.*

Affirmed.