**NATIONAL STEEL CORPORATION, Dome Petroleum Limited, Dow Chemical Canada, Inc., Nova, an Alberta corporation, Petro–Canada, Inc., Shell Canada, Ltd., Dome NGL Pipeline, Ltd., and Dome Pipeline Corporation, Plaintiffs,**

v.

**William E. LONG, Edwyna G. Anderson and Matthew E. McLogan, Defendants.**

and

**Michigan Consolidated Gas Company and Michigan Gas Utilities Company, Intervening Defendants.**

No. G86–88–CA5.

United States District Court, W.D. Michigan, S.D.

July 12, 1989.

**623**

Robert B. Webster and Douglas West of Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., for Nat. Steel Corp.

Pat D. Conner of Conner, Harbour, Snider & Thomas, Ann Arbor, Mich., for all other plaintiffs.

Henry J. Boynton, Asst. Atty. Gen. for State of Mich., Lansing, Mich., for Long, Anderson, McLogan.

William K. Fahey of Foster, Swift, Collins & Coey, Lansing, Mich., for Michigan Consol. Gas Co.

Daniel J. Danlow of Honigman, Miller, Schwarte & Cohn, Lansing, Mich., for Michigan Gas Utilities Co.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

This case presents a challenge to a prospective exercise of regulatory jurisdiction by the Michigan Public Service Commission ("MPSC"). In a seven-count complaint, plaintiffs allege the MPSC is without authority to regulate a proposed delivery of liquid ethane to Nation Steel Corporation.[1] Now before the Court are two motions which place at issue only four of the seven counts. Plaintiffs move for voluntary dismissal of count VII, without prejudice, and for summary judgment as to counts I, II and III.

### I

The facts material to the present motions are not disputed. National Steel Corporation ("National Steel") operates a steel mill facility near Detroit known as Zug Island.

In contemplation of supplying the Zug Island fuel needs with liquid ethane, National Steel has entered into an agreement to purchase ethane in Canada and have it delivered by pipeline directly to Zug Island. The ethane is to be purchased from the plaintiff "ethane sellers," Dome Petroleum Limited, Dow Chemical Canada, Inc., NOVA, Petro–Canada, Inc., and Shell Canada, Inc. From the ethane sellers' storage facility in Windsor, Ontario, the ethane is to be transported by Dome NGL Pipeline, Ltd. and Dome Pipeline Corporation ("Dome Pipeline") via the Eastern Delivery System to a point approximately 2800 feet from Zug Island. At this point, National Steel plans to construct interconnect facilities and a service lateral pipeline for the actual delivery of ethane to Zug Island. It is the proposed delivery by Dome Pipeline to National Steel at the interconnect facilities which the MPSC seeks to regulate.

Under § 2 of Act 69 of the Michigan Public Acts of 1929, ("Act 69"), a public utility such as Dome Pipeline, must obtain a certificate of public convenience and necessity from the MPSC before commencing construction or operation of a public utility plant or system or before rendering any service for the purpose of transacting or carrying on a local business where any other utility is then engaged in such local business or rendering the same sort of service. M.C.L. § 460.502, M.S.A. § 22.142. For purposes of Act 69, liquid ethane is a "gas," the furnishing of which is regulable thereunder. *Dome Pipeline Corp. v. Public Service Comm'n*, 176 Mich.App. 227, 232, 439 N.W.2d 700 (1989). Zug Island is already being furnished natural gas by another utility, Michigan Consolidated Gas Company. Therefore, the MPSC asserts a certificate of public convenience and necessity is prerequisite to commencement of the proposed delivery of ethane. Plaintiffs challenge this assertion on several grounds.

---

1. The MPSC has been eliminated, effective August 16, 1988, as a party defendant, due to its Eleventh Amendment immunity. Nonetheless, for the sake of simplicity, the court refers collectively to the defendant commissioners, sued individually in their official capacities, as the MPSC.

## II

In count VII of the complaint, plaintiffs contend the threatened exercise of regulatory jurisdiction is *ultra vires* and violative of Michigan law. Originally named as defendants were the MPSC and its commissioners, William E. Long, Edwyna G. Anderson and Matthew McLogan. On August 16, 1988, however, the claims against the MPSC, an arm of the State of Michigan, were dismissed because barred by the Eleventh Amendment. Now, plaintiffs seek voluntary dismissal of the count VII claim against the individual commissioners as well. In so moving, they acknowledge (1) the claim alleges a violation of state law; (2) that the commissioners are state officials; (3) that the commissioners have a colorable basis for the threatened exercise of authority; and (4) that the claim is effectively against the state and is barred by the Eleventh Amendment. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). They ask the Court to dismiss the claim without prejudice. In opposing the motion, defendants contend dismissal should be ordered with prejudice.

■ Essentially, plaintiffs' motion is based on the correct recognition that this Court, by virtue of the Eleventh Amendment, lacks subject matter jurisdiction over the claim. This defect having been made clear, the court has no choice but to dismiss the claim, Fed.R.Civ.P. 12(h), without prejudice, for the Court is without authority to address the merits. See *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir.1987); *Verret v. Elliott Equipment Corp.*, 734 F.2d 235 (5th Cir.1984); *Melo v. United States*, 505 F.2d 1026, 1030 (8th Cir.1974). Accordingly, plaintiff's motion for voluntary dismissal without prejudice must be granted.

## III

Counts II and III are two halves of one claim. Plaintiffs allege the threatened ex-

ercise of jurisdiction is barred under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, because it conflicts with federal law. The proposed pipeline transportation of ethane is subject to regulation by the Federal Energy Regulatory Commission ("FERC") under the Interstate Commerce Act, 49 U.S.C. § 1(1)(b).[2] To the extent the MPSC's exercise of jurisdiction would conflict with the FERC's authority, plaintiffs contend, federal law must prevail, preempting Act 69.

Application of the pre-emption doctrine is a function of congressional intent, express or implied. The standards which guide the Court are summarized in *Louisiana Public Service Comm'n v. Federal Communications Comm'n*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986):

> Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), when there is outright or actual conflict between federal and state law, e.g., *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Pre-emption may result not only from action taken by Congress itself; a federal agency acting

---

**2.** While the Interstate Commerce Act has been repealed, the parties agree the authority conferred therein upon the Interstate Commerce Commission to regulate pipeline transportation of oil was preserved and eventually transferred to the FERC. 42 U.S.C. § 7155; 42 U.S.C. § 7172(b). The parties also agree that under federal law, liquid ethane is an "oil."

within the scope of its congressionally delegated authority may preempt state regulation. *Fidelity Federal Savings & Loan Assn. v. De La Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Capital Cities Cable Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

The Interstate Commerce Act ("ICA") does not contain explicit pre-emptive language. Of the various circumstances from which pre-emptive intent may be inferred, plaintiffs focus on two.

### A

First, they contend that, in the ICA, Congress has legislated comprehensively, occupying the field of regulation regarding interstate pipeline transportation of oil. By designating oil pipelines "common carriers," Congress is said to have brought a vast body of law to bear, including duties to furnish transportation upon reasonable request; to establish reasonable through routes, with reasonable facilities; to make reasonable rules and regulations with respect to operation of the routes; and to establish just and reasonable rates in connection with such transportation. 49 U.S.C. § 1(4).

■ Indeed, the obligations imposed on oil pipelines as common carriers under the ICA are stated in broad, general terms.[3] They are not so comprehensive, however, as to justify the inference that Congress intended to completely occupy the field of regulation. In fact, the nature of the regulatory authority here asserted by the MPSC highlights a critical void in the federal regulatory scheme. The purpose of the Act 69 certification requirement is to enable the MPSC to prevent needless multiplication of utilities serving the same local territory so as to avoid wasteful duplication of facilities and keep capital investment at the lowest figure consonant with satisfactory service. *Huron Portland Cement Co. v. Michigan Public Service Comm'n*, 351 Mich. 255, 267, 88 N.W.2d 492 (1958).

These interests "are of essentially local concern and vital to the State of Michigan." *Panhandle Eastern Pipe Line Co. v. Michigan Public Service Comm'n*, 341 U.S. 329, 334, 71 S.Ct. 777, 780, 95 L.Ed. 993 (1951) ("*Panhandle/Michigan*"). Notwithstanding their importance, such interests are ignored in theory and in practice under the federal regulatory scheme. Under these circumstances, the Court cannot infer congressional intent to occupy the field and thereby pre-empt state regulation of the proposed delivery of ethane.

Plaintiffs maintain the imminent possibility of collision between state law and federal law requires pre-emption, citing *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316, 331 (1988). In *Schneidewind*, however, the court did not hold that an imminent possibility of collision requires pre-emption; merely that it *suggests* congressional intent to occupy the field of regulation. The *Schneidewind* court expressly acknowledged that "hypothetical conflicts will not always show an intent to pre-empt state authority." *Id.*, 485 U.S. at ——, 108 S.Ct. at 1156. And while imminent possibility of collision *may suggest* comprehensive regulation, this Court has already noted the existence of a strong countervailing consideration in this case: the federal scheme is not so comprehensive as to address the local interests which are the focus of state regulation.

For the same reason, the Court remains unpersuaded that an imminent possibility of collision exists. For, in spite of the broad terms of the ICA, it appears the actual regulation of oil pipelines by the FERC consists merely of receiving filed rates and tariffs and presuming they are reasonable unless challenged. This receipt of filed rates can hardly be deemed an explicit authorization of the proposed delivery of ethane. It represents merely an implicit finding that the rates to be charged for proposed interstate transportation are just and reasonable; a finding that the

---

**3.** Notwithstanding the broad terms, the FERC's authority to enforce such obligations appears to be exercised only in a narrow sense. At 18 C.F.R. Parts 340–347, the FERC has established regulations governing only the procedures for filing rate schedules and tariffs.

rates will not, because of their unreasonableness, stand as an obstacle to the proposed transaction. It is a finding which says nothing about other aspects of the transportation and delivery potentially regulable by the FERC under the ICA or by the MPSC under Act 69. Clearly, the MPSC can undertake and complete evaluation of public convenience and necessity in a local community without interfering with FERC-approved transportation rates. Even if certification were ultimately denied, such determination could and probably would be made irrespective of the reasonableness of the approved transportation rates. Instead of posing an imminent possibility of collision, these two regulatory schemes appear to be complementary, addressing different concerns, occupying different fields.[4]

■ Plaintiffs contend the requirement to file rates with the FERC is entitled to greater pre-emptive weight, pursuant to the "filed rate doctrine." The filed rate doctrine, however, adds nothing to the foregoing analysis. The doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981). The doctrine's purpose is to preserve the federal agency's primary jurisdiction over reasonableness of rates, thereby assisting in enforcement of the supremacy of federal law. *Id.,* 453 U.S. at 577–578, 101 S.Ct. at 2930–2931. To the extent state regulatory efforts "conflict with or interfere with" FERC-approved rates they are pre-empted. *Chicago and North Western Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 319, 101 S.Ct. 1124, 1131, 67 L.Ed.2d 258 (1981). The doctrine's pre-emptive effect is not limited to other rate-setting orders. *Nantahala Power & Light v. Thornburg,*

476 U.S. 953, 966, 106 S.Ct. 2349, 2356, 90 L.Ed.2d 943 (1986). However, unless state action conflicts with or interferes with FERC-approved rates, the doctrine has no application.

Here, the MPSC is not threatening any action which poses a direct conflict with FERC regulatory authority. The form of regulation threatened is the mere assertion of jurisdiction, so that public convenience and necessity can be evaluated. At this stage, upon assertion of jurisdiction over matters left unregulated under the federal scheme, the possibility of conflict is not imminent, but remote and speculative—too speculative to trigger pre-emption. See *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Comm'n,* 461 U.S. 375, 389, 103 S.Ct. 1905, 1915, 76 L.Ed.2d 1 (1983).

B

Plaintiffs assert there is a second circumstance from which pre-emptive intent should be inferred. Even though Congress be found not to have legislated comprehensively, they contend, state regulation which stands as an obstacle to accomplishment of the full objectives of Congress is pre-empted. *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 150–151, 96 S.Ct. 2548, 2557–2558, 49 L.Ed.2d 396 (1976); *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). They suggest Congress may have ordained that certain activities of oil pipelines be left unregulated, by federal *and* state authorities.

The argument appears to fly in the face of plaintiffs' first position, i.e., that Congress, in the ICA, has legislated comprehensively. Nonetheless, it is conceivable that the FERC, in refraining from exercising many of its broad delegated powers, has authoritatively determined that certain activities are best left unregulated. If so,

---

**4.** In this respect, the present case is materially distinguishable from *National Steel Corp. v. Long,* 689 F.Supp. 729 (W.D.Mich.1988) (*"National Steel I"*), where this Court held that Congress had, in the Natural Gas Act, occupied the field of regulation; that the FERC, in pursuance of the comprehensive regulatory scheme, had

exercised jurisdiction and considered local interests through its own public convenience and necessity certification requirement; that the MPSC's assertion of jurisdiction under Act 69 posed an imminent possibility of conflict therewith; and that, therefore, Act 69 was pre-empted.

the federal decision to forgo regulation would have as much pre-emptive force as a decision to regulate. *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Comm'n, supra,* 461 U.S. at 384, 103 S.Ct. at 1912. There is, however, little evidence of such an authoritative determination.[5] In fact, it appears just as likely that federal silence concerning the interests the MPSC seeks to address reflects recognition that such interests are peculiarly local in nature and are best left to regulation by the states.

Where congressional intent is so ambiguous, pre-emptive intent cannot be inferred:

[F]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.

*Florida Lime and Avocado Growers v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). Here, the Court finds no persuasive reasons to infer pre-emptive intent, but only speculative argument. Where the intended interplay of state and federal regulatory schemes is unclear, the proper approach is to reconcile the operation of the two schemes with one another, rather than holding one completely ousted. *Merrill Lynch, Pierce, Fenner & Smith v. Ware,* 414 U.S. 117, 127, 94 S.Ct. 383, 389, 38 L.Ed.2d 348 (1973). Accordingly, the Court rejects plaintiffs' second argument in favor of pre-emption.

## C

The Court thus concludes the MPSC's assertion of jurisdiction under Act 69 is not pre-empted by the ICA. It follows that plaintiffs' motion for summary judgment as to the claim embodied in counts II and III must be denied. Further, there being no genuine issue as to any material fact, it appears defendants are entitled to summary judgment in their favor. Although defendants have not filed a cross-motion for summary judgment, the Court may award summary judgment to a non-moving party where it is warranted. See 6 *Moore's Federal Practice* (2d ed.) ¶ 5612. All parties have had a full and fair opportunity to present facts and legal argument and have treated this claim as presenting essentially a question of law. Under these circumstances, summary judgment in favor of defendants is clearly warranted.

## IV

Count I of the complaint is premised on the Commerce Clause. U.S. Const., Art. I, § 8, cl. 3. Plaintiffs allege the MPSC's exercise of regulatory jurisdiction imposes an undue and impermissible burden on foreign/interstate commerce.

Under the Commerce Clause, "The Congress shall have Power.... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Even in the absence of pre-emptive congressional legislation, the Commerce Clause contains an implied limitation on the power of the states to interfere with or impose burdens on foreign and interstate commerce. *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Comm'n, supra,* 461 U.S. at 389, 103 S.Ct. at 1915; *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 448, 99 S.Ct. 1813, 1820, 60 L.Ed.2d 336 (1979). That the MPSC's assertion of regulatory jurisdiction touches upon foreign or interstate commerce is not disputed. To with-

---

5. Plaintiffs rely on dicta appearing in two decisions of the Circuit Court for the District of Columbia. First, the court noted the regulatory scheme established in the ICA suggests "a congressional intent to allow a freer play of competitive forces among oil pipeline companies than in other common carrier industries." *Farmers Union Central Exchange v. Federal Energy Regulatory Comm'n,* 584 F.2d 408, 413 (D.C. Cir.1978) (*"Farmers Union I"*). Later the court explained that "competitive forces are given freer play by permitting companies to decide for themselves whether to enter a geographic territory already served by another pipeline company." *Farmers Union Central Exchange, Inc. v. Federal Energy Regulatory Comm'n,* 734 F.2d 1486, 1509, n. 51 (D.C.Cir.1984) (*"Farmers Union II"*). Both statements are clearly dicta, were made in the context of establishing rate-making standards, and have no direct bearing on the pre-emption issue before this Court.

stand scrutiny under the Commerce Clause, such regulation must survive several tests.

The regulation may be struck down as invalid per se if it "directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests." *Brown–Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986). The critical consideration in this test is the overall effect of the statute on both local and interstate activity. *Id.* The regulatory authority here asserted under Act 69 applies to *any* "public utility," whether in-state, out-of-state or foreign. Since Act 69 does not discriminate between interstate and intrastate commerce, it does not effect simple economic protectionism, which is invalid per se, but regulates evenhandedly. *Panhandle/Michigan, supra*, 341 U.S. at 336–337, 71 S.Ct. at 781–782; *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471–472, 101 S.Ct. 715, 727–728, 66 L.Ed.2d 659 (1981). Compare *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

State regulation which applies evenhandedly is scrutinized under a different test:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Here, Act 69 clearly serves legitimate local public interests. *Huron Portland Cement Co. v. Michigan Public Service Comm'n, supra.* These interests have been identified as "vital to the State of Michigan." *Panhandle/Michigan, supra*, 341 U.S. at 334, 71 S.Ct. at 780.

■ That there is, ostensibly, no local sale, but only delivery, of ethane in Michigan does not diminish the importance of the local interests. Whether title to the ethane passes in Canada or in Michigan, the effect of the proposed transaction upon local interests is the same. If National Steel substitutes ethane for natural gas at Zug Island, the loss to Michigan Consolidated Gas Company of a major industrial customer will "no doubt be reflected adversely in Consolidated's over-all costs of service and its rates to customers whose only source of supply is Consolidated." *Panhandle/Michigan*, 341 U.S. at 334, 71 S.Ct. at 780. The state has a legitimate and substantial interest in protecting the capital investment of utilities already serving the public and in protecting existing utility rate structures. These interests certainly justify the incidental and relatively light burden of requiring application for a certificate of public convenience and necessity. *Id.*, 341 U.S. at 336, 71 S.Ct. at 781. In the absence of federal regulation, such state regulation is not only reasonable and appropriate, but "required in the public interest." *Id.*, 341 U.S. at 333, 71 S.Ct. at 779.[6]

Yes, the burden will have become considerably greater if certification is ultimately

**6.** The Court cites the Supreme Court's recognition of the importance of the local interests secured through Act 69 even though, admittedly, such recognition was not the gravamen of the *Panhandle/Michigan* ruling. See this Court's Opinion in *National Steel Corp. v. Long*, 689 F.Supp. 729, 733 (W.D.Mich.1988) ("*National Steel I*"). Further explanation is appropriate.

In *Panhandle/Michigan*, the Supreme Court considered Supremacy Clause and Commerce Clause challenges to the MPSC's assertion of jurisdiction under Act 69 to regulate a direct retail sale of natural gas in interstate commerce.

The Supreme Court ultimately held that Act 69 was not pre-empted by the Natural Gas Act. 15 U.S.C. § 717 *et seq.* The ruling was based on recognition that Congress, in the Natural Gas Act, exercised its power under the Commerce Clause to occupy the field of regulation concerning natural gas commerce—but "only a part of the field." *Id.*, 341 U.S. at 334, 71 S.Ct. at 780. In drawing the parameters of federal regulation, Congress explicitly left to the states power to regulate direct retail sales and "local distribution." Since the proposed transaction in *Panhandle/Michigan* involved a direct retail sale of

denied, but this eventuality is not a fact which the Court may now consider. The challenged statute, Act 69, does not effect an outright ban on the proposed delivery of ethane, but through the certification process, permits the MPSC to regulate flexibly. Until the MPSC rules on the certificate application, it is impossible to determine any more definitely whether the burden imposed is excessive in relation to the putative local benefits. At this point, the Court cannot permit the hypothetical possibility that certification will be denied to control evaluation of this facial challenge to the mere assertion of regulatory jurisdiction. *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Comm'n, supra,* 461 U.S. at 395, 103 S.Ct. at 1918.

The same reasoning applies to plaintiffs' argument that burdens upon foreign commerce are subject to even more rigorous scrutiny. *South–Central Timber Development, Inc. v. Wunnicke,* 467 U.S. 82, 100, 104 S.Ct. 2237, 2247, 81 L.Ed.2d 71 (1984); *Japan Line, Ltd. v. County of Los Angeles, supra,* 441 U.S. at 448, 99 S.Ct. at 1821. For even under more rigorous scrutiny, Act 69 does not discriminate against foreign commerce and imposes, through the certificate application requirement, a burden which is light in relation to the local interests served.

The Court concludes, therefore, that the MPSC's assertion of regulatory jurisdiction under Act 69 does not unduly burden foreign or interstate commerce. Plaintiffs' motion for summary judgment as to count I must be denied. Conversely, again, it appears defendants, though they have not moved for it, are entitled to summary judgment in their favor.

V

In summary, the Court has determined that count VII should be dismissed without prejudice and that defendants are entitled to summary judgment with respect to counts I, II and III.

An order consistent with this Opinion shall issue forthwith.

ORDER OF PARTIAL DISMISSAL

In accordance with the Court's written Opinion issued on July 11, 1989.

IT IS HEREBY ORDERED that plaintiffs' motion for voluntary dismissal of the claim contained in count VII is GRANTED;

IT IS FURTHER ORDERED that the claim contained in count VII is DISMISSED without prejudice;

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment as to the claims contained in counts I, II and III is DENIED.

IT IS FURTHER ORDERED, however, upon the Court's finding that there remains no genuine issue as to any material fact, that defendants are entitled to SUMMARY JUDGMENT in their favor as to the claims contained in counts I, II and III;

IT IS FURTHER ORDERED accordingly that the claims contained in counts I, II and III are DISMISSED with prejudice.

gas in Michigan, it was held to be properly regulable by the MPSC under the dual regulatory scheme established by Congress in the Natural Gas Act. This was the gravamen of the Supreme Court's ruling.

The Supreme Court noted, however, that the result would have been the same even if Congress had not so clearly spoken. For, in the absence of the Natural Gas Act "bright line," the Supreme Court would have employed traditional Commerce Clause interest-balancing analysis and would have found the local interests sufficiently vital to justify the slight burden on commerce which MPSC regulation represented.

This second line of reasoning is relevant here, in contradistinction to *National Steel I,* because Congress has not spoken as clearly in the ICA regarding regulation of oil pipelines as it has in the Natural Gas Act regarding natural gas commerce. While the ICA does not, as indicated *supra,* pre-empt the subject state regulatory efforts, neither does it explicitly sanction them. The Court must therefore employ traditional Commerce Clause interest-balancing consistent with the test enunciated in *Pike v. Bruce Church, supra.* For this purpose, the Supreme Court's recognition of the importance of the local interests secured through Act 69, even though arguably dictum, is critical.