NATIONAL STEEL CORPORATION; Dome Petroleum Limited; Dow Chemical Canada, Inc.; Nova, an Alberta Corporation; Petro–Canada, Inc.; Shell Canada, Ltd.; Dome NGL Pipeline, Ltd.; Dome Pipeline Corporation, Plaintiffs–Appellants,

v.

MICHIGAN PUBLIC SERVICE COMMISSION, Defendant,

William E. Long; Edwyna G. Anderson; Matthew E. McLogan, Defendants–Appellees,

Michigan Consolidated Gas Co.; Michigan Gas Utilities Company, Intervening Defendants–Appellees.

No. 89–2363.

United States Court of Appeals, Sixth Circuit.

Oct. 9, 1990.

Decided Nov. 16, 1990.

Jean G. Schtokal (argued), Douglas H. West, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., Pat D. Conner, Conner, Harbour & Green, Ann Arbor, Mich., for plaintiffs-appellants.

Donald L. Keskey, Asst. Atty. Gen., Office of the Atty. Gen. of Michigan, Lansing, Mich., for defendant.

Donald L. Keskey, Henry J. Boynton (argued), Asst. Attys. Gen., Office of the Atty. Gen. of Michigan, Lansing, Mich., for defendants-appellees.

Glen A. Schmiege, William K. Fahey, Foster, Swift, Collins & Coey, Daniel J. Demlow, James A. Ault, Honigman, Miller, Schwartz & Cohn, Lansing, Mich., William F. Brauninger, Monroe, Mich., for intervening defendants-appellees.

Before MARTIN and NORRIS, Circuit Judges, and WISEMAN, Chief District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

National Steel Corporation appeals from the district court's grant of summary judgment, 718 F.Supp. 622, in favor of the

---

[*] The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation.

Michigan Public Service Commission and presents this Court with two challenging constitutional issues: First, did Congress, through the Interstate Commerce Act, intend to regulate the entire field of interstate oil transportation by pipeline and, thus, preempt Michigan Public Act 69; second, is the Michigan Public Service Commission's certification requirement, established by Michigan Public Act 69, prohibited by the Commerce Clause's implied limitation on the power of states to impose burdens on interstate commerce? 1929 Mich.Pub.Acts 69. We affirm the district court's grant of summary judgment. The purpose of the Act 69 certification requirement is to enable the Michigan Public Service Commission to prevent the needless multiplication of facilities, an essentially local interest ignored in the Interstate Commerce Act.

The material facts are not disputed. National operates a steel mill near Detroit, Michigan. In order to meet the mill's needs for liquid ethane, National has entered into an agreement to purchase ethane in Canada and to have it delivered by pipeline. The ethane sellers, which are also plaintiffs, are Dome Petroleum Ltd., Dow Chemical Canada, Inc., NOVA, Petro–Canada, Inc., and Shell Canada, Inc.

The ethane is to be transported from Windsor, Ontario by Dome Pipeline Corporation and Dome NGL Pipeline over their Eastern Delivery System to a point approximately 2800 feet from National's mill. At this point, National plans to construct interconnecting tap facilities and a lateral service pipeline over easements it has obtained. The Michigan Public Service Commission would seek to regulate the construction and operation of the tap facility and lateral service pipeline as well as the delivery of the ethane at that tap facility from Dome Pipeline to National should the transaction progress further.

The proposal to build a pipeline to National's mill is not the only effort by Dome Pipeline to provide ethane to industrial customers over the Eastern Delivery System. Dome's attempt to furnish ethane to Guardian Industries Corporation, which operates a large glass manufacturing plant in Carlton, Michigan, was the subject of an extensive proceeding before the Michigan Public Service Commission. *Re Dome Pipeline Corporation*, 78 P.U.R. 4th 1 (M.P.S.C.1986). The Great Lakes Steel Division of National was an intervenor in that proceeding which dealt with, among other arguments, the claim that the Michigan Public Service Commission's jurisdiction under Act 69 was preempted by the Interstate Commerce Act and the claim that the Michigan Public Service Commission's effort to regulate was in violation of the Commerce Clause. The Michigan Public Service Commission rejected these Constitutional arguments. Their order was upheld by the Michigan Court of Appeals in *Dome Pipeline Corp. v. Public Service Comm.*, 176 Mich.App. 227, 439 N.W.2d 700 (1989). A leave to appeal that decision was denied by the Michigan Supreme Court. *Dome Pipeline Corp. v. Public Service Comm.*, 434 Mich. 888 (1990).

Recognizing that the Michigan Public Service Commission's decision with respect to Guardian Industries' transaction would be applicable to the proposed transaction involving National, the Appellants brought a declaratory action requesting injunctive relief against the Michigan Public Service Commission in the United States District Court. This action again raised the Supremacy and Commerce Clause arguments and again the arguments failed. This appeal followed.

In *Louisiana Public Service Comm'n v. Federal Communications Comm'n*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986), the Supreme Court put forth a number of ways in which Congress can be understood to have preempted state law:

> Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law ... when there is outright or actual conflict between federal and state law ... where compliance with both federal and state law is in effect physically impossible ... where there is implicit in federal law a barrier to state regulation ... where Congress has legislated comprehensively,

thus occupying an entire field of regulation and leaving no room for the States to supplement federal law ... or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.... Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may preempt state regulation.

(Citations omitted).

■ Appellants argue Congress has legislated comprehensively, thus preempting Michigan Public Act 69. Unlike the regulation set forth by Congress in the Natural Gas Act, the Interstate Commerce Act is far from extensive in scope. *See Michigan Consolidated v. Panhandle*, 887 F.2d 1295 (6th Cir.1989), *reh'g denied* (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1806, 108 L.Ed.2d 937 (1990); *Compare* 15 U.S.C. §§ 717 *et seq. with* 49 U.S.C. §§ 1 *et seq.* The Interstate Commerce Act regulates the transportation rates charged to shippers of oil; it does not confront the problems which arise from the multiplication of oil utilities serving consumers. 49 U.S.C. §§ 1 *et seq.* The purpose of the Act 69 certification requirement is to enable the Michigan Public Service Commission to prevent wasteful multiplication of oil utilities serving local territories. *Huron Portland Cement Co. v. Michigan Public Service Comm'n*, 351 Mich. 255, 267, 88 N.W.2d 492 (1958). There is nothing in the purpose or structure of the Interstate Commerce Act which could lead this Court to conclude that Congress intended to pre-empt such a statute. Indeed, the two acts focus on opposite ends of the pipeline: the Interstate Commerce Act regulates shippers of oil while the Michigan Public Service Commission regulates retail sales to local consumers.

■ Appellants also assert the Federal Energy Regulatory Commission's rate setting authority conflicts with Section 5 of Act 69, which states, "the commission shall take into consideration ... the benefit, if any, to the public in the matter of rates and such other matters as shall be proper and equitable," thus, presenting the "imminent possibility of collusion" and requiring a finding of preemption. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 310, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988); 1929 Mich. Pub.Acts 69 § 5. However, appellants avoid the correlative principle set forth by the Supreme Court in *Schneidewind:* "hypothetical conflicts will not always show an intent to preempt state authority." *Ibid.* Although the possibility of collusion may suggest comprehensive regulation, such an inference is not required and, in this case, would be imprudent; to do so would be to leave the enormous industry of retail oil sales unregulated. Because the Interstate Commerce Act does not address the local interest in preventing wasteful multiplication of facilities, the inference should not be made in this case.

■ Lastly, the appellant argues the Michigan Public Service Commission's regulatory authority violates the Commerce Clause. This argument was already dismissed by the Supreme Court in *Panhandle Eastern Pipe Line Co. v. Public Service Commission of Indiana*, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128 (1947). In *Panhandle/Indiana*, the Court held "states could regulate sales direct to consumers, even though made by an interstate pipeline carrier." *Id.* at 514, 68 S.Ct. at 193–94. In *Panhandle Eastern Pipe Line Co. v. Michigan Public Service Comm.*, 341 U.S. 329, 334, 71 S.Ct. 777, 95 L.Ed. 993 (1951), the Court specifically held Act 69 does not violate the Commerce Clause:

The sale to industrial customers as proposed by [Panhandle] is clearly interstate commerce.... But the sale and distribution of gas to local consumers made by one engaged in interstate commerce is 'essentially local' in aspect and is subject to state regulation without infringement of the Commerce Clause of the Federal Constitution. In absence of federal regulation, state regulation is required in the public interest.... [Panhandle] asserts a right to compete for the cream of the volume business without regard to the local public convenience or necessity. Were [Panhandle] successful in this ven-

ture it would no doubt be reflected adversely in Consolidated's overall costs of service and its rates to customers whose only source of supply is Consolidated. This clearly presents a situation of 'essentially local' concern and of vital interest to the State of Michigan.

Because the Michigan Public Service Commission is only seeking to regulate the construction and operation of a tap facility and lateral service pipeline in Michigan to a Michigan consumer, the transaction is "essentially local" and there is no infringement on the Commerce Clause.

For the foregoing reasons, we affirm the judgment of the district court.