# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco : 
Pipeline L.P. of Permanent and : 
Temporary Rights of Way for the : 
Transportation of Ethane, Propane, : 
Liquid Petroleum Gas, and Other : 
Petroleum Products in the Township : 
of Union, Huntingdon County, : 
Pennsylvania, Over the Lands of : 
Stephen Gerhart and Ellen S. Gerhart : 
  : 
Appeal of: Stephen Gerhart and : No. 220 C.D. 2016
Ellen S. Gerhart : Submitted: September 2, 2016


BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                 **HONORABLE ANNE E. COVEY,** Judge
                 **HONORABLE JOSEPH M. COSGROVE,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: May 15, 2017**

Stephen Gerhart and Ellen S. Gerhart (Condemnees) appeal from the January 6, 2016 Order of the Court of Common Pleas of Huntingdon County (common pleas) that overruled Condemnees' Preliminary Objections (POs) to the Declaration of Taking (Declaration) filed by Condemnor Sunoco Pipeline L.P. (Sunoco) to facilitate construction of the second phase of its Mariner East Project known as the Mariner East 2 pipeline. Condemnees contend that common pleas erred because the Mariner East 2 pipeline is not in the public interest, Sunoco's

Declaration is barred under the doctrine of collateral estoppel by an earlier York County Court of Common Pleas decision, and Sunoco's bond is inadequate.

This Court recently issued an en banc opinion in In Re: Condemnation by Sunoco Pipeline, L.P., 143 A.3d 1000 (Pa. Cmwlth.), petition for allowance of appeal denied, (Pa., Nos. 571, 572, 573 MAL 2016, filed December 29, 2016) (Sunoco I), which decided a majority of the issues which Condemnees raise here. After careful review of the record in this case, and consistent with our decision in Sunoco I, we find no error in common pleas' Order and therefore affirm.

## I. Background of the Instant Appeal

On July 21, 2015, Sunoco filed a Declaration seeking a permanent easement of 1.72 acres and temporary workspace easements totaling 1.44 acres over portions of Condemnees' 27-acre property located along Trough Creek Valley Pike in Union Township, Huntingdon County. (R.R. at 1b-15b.)[1] Sunoco seeks the easements for its planned Mariner East 2 pipeline. (R.R. at 13b.) On August 20, 2015, Condemnees filed POs to Sunoco's Declaration. (R.R. at 1c-7c.) Following an evidentiary hearing on the POs on November 3, 2015, common pleas issued an Order on January 6, 2016, overruling all of Condemnees' POs. (R.R. at 1*l*-2*l*.) This appeal followed.[2]

---

[1] Condemnees did not strictly follow Rule 2173 of the Pennsylvania Rules of Appellate Procedure that the reproduced record be numbered using Arabic figures followed by a small a, and any supplemental reproduced record being followed by a small b. Instead Condemnees used Arabic figures followed by different letters for different sections of the reproduced record.

[2] In an eminent domain case disposed on preliminary objections, this Court is limited to determining if common pleas' necessary findings of fact are supported by competent evidence or if an error of law or an abuse of discretion was committed. Stark v. Equitable Gas Co., LLC, 116 A.3d 760, 765 n.8 (Pa. Cmwlth. 2015).

### A.    Evidence presented before Common Pleas

#### 1.    Regulation of Sunoco as a Public Utility

The record made before common pleas shows that Sunoco has operated as a public utility in Pennsylvania since 2002.  (R.R. at 1b-9b.)  At that time, Sunoco acquired the assets of Sun Pipe Line Company (Sun) and Atlantic Pipeline Corporation (Atlantic), which included an existing integrated pipeline system. (Id.)  Sun and Atlantic were public utilities under PUC's jurisdiction, and upon application by Sunoco, PUC issued a Certificate of Public Convenience (CPC) approving Sunoco to transport petroleum products and refined petroleum products as a public utility in Sun's and Atlantic's former service territory (between Delmont, Westmoreland County and Twin Oaks, Delaware County, which territory includes Huntingdon County).  (R.R. at 16b-31b.)  When it issued the CPC, PUC found that the transfer of assets to Sunoco "provides an affirmative public benefit" and is "necessary or proper for the service, accommodation, convenience, or safety of the public, and that [Sunoco's] application is in the public interest and should be approved."  (R.R. at 21b-22b.)

#### 2.    The Mariner East Project

Sunoco planned the Mariner East Project to transport natural gas liquids (NGLs)[3] such as propane, ethane, and butane within the service territory authorized

---

[3] According to the United States Energy Information Administration:

Natural gas liquids (NGLs) are hydrocarbons—in the same family of molecules as natural gas and crude oil, composed exclusively of carbon and hydrogen.  Ethane, propane, butane, isobutane, and pentane are all NGLs . . . NGLs are used as inputs for petrochemical plants, burned for space heat and cooking, and blended into vehicle fuel . . . .

*(Continued…)*

3

by the 2002 CPC. (R.R. at 3b.) The Mariner East Project consists of multiple phases, and the overall goal is to relieve the oversupply of NGLs in the Marcellus and Utica Shale Basins and to remedy propane shortages in Pennsylvania and in the Northeast. (Id.)

Sunoco initially intended the Mariner East Project to prioritize interstate service. The first phase, known as Mariner East 1, was designed to transport NGLs from the Marcellus and Utica Basins east to the Marcus Hook Industrial Complex (MHIC) located in both Delaware County and in Claymont, Delaware. (Id.) However, the record indicates that Sunoco also contemplated the *intrastate* transportation of propane for delivery to Pennsylvania customers. (Id.) During the completion of Mariner East 1, Sunoco experienced a significant increase in demand for intrastate shipments of propane, driven by local consumer demand. (Id.) The record further reflects that harsh winter conditions experienced in the 2013-14 winter season, combined with a pipeline infrastructure deficit, led to propane shortages and changing market conditions. (Id.) Because of this, Sunoco accelerated its plans to provide intrastate shipments of propane, in addition to interstate shipments of propane and ethane, through the Mariner East Project. (Id.)

This increased focus on intrastate shipments is the driver for the second phase of Sunoco's Mariner East Project, Mariner East 2. (R.R. at 3b-9b.) Mariner

---

The chemical composition of these hydrocarbons is similar, yet their applications vary widely. Ethane occupies the largest share of NGL field production. It is used almost exclusively to produce ethylene, which is then turned into plastics. Much of the propane, by contrast, is burned for heating, although a substantial amount is used as petrochemical feedstock . . . .

United States Energy Information Administration, Today in Energy, April 20, 2012, available at http://www.eia.gov/todayinenergy/detail.cfm?id=5930&src=email (last visited May 11, 2017).

East 2 will consist of pipelines with access points in Ohio, West Virginia, and Pennsylvania; product will be placed into a pipeline ("on-ramps"), and there will be multiple exit points within Pennsylvania where product will be removed from the pipeline ("off-ramps"). Mariner East 2 generally will run parallel to the Mariner East 1 line. The Mariner East project (through Mariner East 1 and Mariner East 2) will transport petroleum products in Sunoco's certificated areas as an integrated service.[4]

### 3.    PUC Orders and Tariffs

The record before common pleas contains references to several PUC proceedings initiated by Sunoco when its focus for the Mariner East Project moved from *interstate* to *intrastate* transportation of NGLs after winter 2013-14. (R.R. at 3b-9b.) These proceedings, and the resulting PUC orders, include the following actions: by Order dated July 24, 2014, PUC reaffirmed Sunoco's authority to transport petroleum products between Delmont, Westmoreland County, and Twin Oaks, Delaware County, (R.R. at 32b-42b); by Order dated August 21, 2014, PUC

_____

[4] See the PUC's August 21, 2014 Order, which states:

> Subject to continued shipper interest, Sunoco intends to undertake a second phase of the Mariner East project, which will expand the capacity of the project by constructing: (1) a 16 inch or larger pipeline, paralleling its existing pipeline from Houston, PA to the Marcus Hook Industrial Complex and along much of the same route, and (2) a new 15 miles of pipeline from Houston, PA to a point near the Pennsylvania-Ohio boundary line. This second phase, sometimes referred to as "Mariner East 2", will increase the take-away capacity of natural gas liquids from the Marcellus Shale and will enable Sunoco to provide additional on-loading and off-loading points within Pennsylvania for both intrastate and interstate propane shipments.

(R.R. at 50b-51b.)

5

approved a tariff for Sunoco's west-to-east intrastate movement of propane from Mechanicsburg, Cumberland County, to Twin Oaks, (R.R. at 43b-47b); by Order dated August 21, 2014, PUC granted Sunoco a CPC authorizing it to provide intrastate transportation service of petroleum products in Washington County, which expanded the service territory in which Sunoco is authorized to provide its Mariner East service, (R.R. at 48b-53b); by Order dated January 15, 2015, PUC approved a tariff for Sunoco's west-to-east intrastate movement of propane, reflecting a new origin point of Houston, Washington County, (R.R. at 54b-58b); and by Order dated March 26, 2015, PUC approved a supplemental tariff for intrastate shipments from Delmont, Westmoreland County to Twin Oaks, Delaware County, (R.R. at 59b-62b).

**B.    Common Pleas' January 6, 2016 Order and 1925(a) Opinion**

After a hearing on Condemnees' POs, common pleas on January 6, 2016 issued an Order overruling those POs in their entirety, finding as follows:

1.    Sunoco Pipeline L.P. is a public utility, and as such, is appropriately regulated by the Pennsylvania Public Utility Commission.

2.    The proposed Mariner 2 East pipeline will provide both intrastate and interstate service for the transportation of petroleum products.

3.    The regulation of Sunoco Pipeline L.P. by the Pennsylvania Public Utility Commission is not preempted by federal law.

4.    Sunoco Pipeline L.P. does have the statutory power of eminent domain.

5.    The bond posted by Sunoco Pipeline L.P. is adequate pursuant to the evidence presented.

(R.R. at 1*l*-2*l*.)

Upon the filing by Condemnees of their appeal to this Court, common pleas directed the filing of a Concise Statement of Errors Complained of on Appeal (Statement) pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(b),[5] after which common pleas on March 31, 2016, issued its Opinion in support of its January 6, 2016 Order. (R.R. at 3*l*-8*l*.)

As to whether Sunoco is a public utility regulated by PUC, common pleas held that Sunoco's 2002 acquisition of Sun and Atlantic included those entities' CPCs, and that the PUC Orders granting CPCs and tariffs identified above demonstrated that PUC is regulating Sunoco's Mariner East pipelines. (Common pleas' Op. at 1-2.) As to whether the proposed Mariner East 2 pipeline will provide both interstate and intrastate service, common pleas held that Sunoco proved that the pipeline would provide intrastate service through the addition of on-ramps and off-ramps within the Commonwealth. (Id. at 2.) Addressing Condemnees' argument that Sunoco did not provide any PUC Orders approving the Mariner East 2 pipeline, common pleas noted that "PUC [CPCs] are not pipeline-specific; they are issued for a service in a certificated area" and that "[a]s such, PUC does not require Sunoco . . . to apply for approval for the proposed

_____

[5] Pa. R.A.P. 1925(b) provides as follows:
**Rule 1925. Opinion in Support of Order**
* * *
**(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.--**If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Id.

7

Mariner East 2 pipeline." (Id.) While noting PUC's August 21, 2014 Order, quoted above in footnote 3, common pleas further observed that:

> A taking can be public even though there is private enterprise involved. In re Land Along Woodside Rd., [] 617 A.2d 74 (Pa. [Cmwlth.] 1992). The PUC already has determined Sunoco[]'s service is for a public need in past orders.[] Condemnor's Ex. 6.
>
> The Court heard testimony about the polar vortex during winter of 2013 that led to a desire to move intrastate products, and what became an increase in shipper and local demand for propane. Sunoco [] proved that shippers were not efficiently getting their propane by "truck and rail." The proposed Mariner East 2 pipeline will efficiently move products and remove about 500 tractor trailer loads per day from the highway.
>
> While Sunoco [] did not provide any final PUC orders that clearly determined it was for the public, the PUC has provided, through its orders, that the pipeline service is for the public benefit. See, e.g., Condemnor's Ex. 6, p. 3-4.

(Common pleas' Op. at 2-3 (footnote omitted).)

Common pleas next addressed Condemnees' argument that PUC regulation of the Mariner East Project is preempted by federal law and held that the Federal Energy Regulatory Commission (FERC) regulates interstate service and PUC regulates intrastate service. Since each agency regulates a different aspect of the pipeline service, common pleas held that there is no preemption by federal law of PUC's regulatory authority. (Id. at 3-4.)

As to whether Sunoco is clothed with the statutory power of eminent domain, common pleas noted that PUC has found the Mariner East Project to be a public benefit, found that Condemnees failed to present evidence that Sunoco was

8

not a public utility under the Business Corporation Law of 1988 (BCL),[6] and noted that Sunoco met the requirements for a public utility corporation under the BCL.[7] Condemnees also argued that Sunoco's Declarations were barred by collateral estoppel under Sunoco Pipeline, L.P. v. Loper, 2013-SU-4518-05 (C.P. York, February 24, 2014) (reaffirmed March 25, 2014), in which the court held that the Mariner East 2 pipeline was regulated by FERC as an interstate service and that Sunoco thus lacked the power of eminent domain. Common pleas found that, subsequent to the Loper decision, Sunoco added an intrastate component to the Mariner East Project, whereas in Loper the project solely provided interstate service. Common pleas, therefore, held that collateral estoppel did not apply to bar Sunoco's Declarations. (Common pleas' Op. at 4-5.) Common pleas further stated that it would not address whether it erred when it did not direct Condemnees' POs to PUC to determine whether the Mariner East Project serves a public need because Condemnees did not raise this issue in their POs. (Id. at 5-6.)

### C.    Issues Raised on Appeal

On appeal, Condemnees argue that:  1) Mariner East 2 imparts no public benefit justifying eminent domain power, in part because Mariner East 1 adequately meets public demand; 2) Sunoco's Declaration is barred under the doctrine of collateral estoppel by the earlier York County decision in Loper, which

---

[6] 15 Pa. C.S. §§ 1101-9507.

[7] Section 1511(a)(2) of the BCL, 15 Pa. C.S. § 1511(a)(2),  provides that "public utility corporations" may exercise the power of eminent domain to condemn property for the transportation of, *inter alia*, natural gas and petroleum products.  Section 1103 of the BCL, 15 Pa. C.S. § 1103, defines public utility corporation as "[a]ny domestic or foreign corporation for profit that . . . is subject to regulation as a public utility by the [PUC] or an officer or agency of the United States . . . ."  FERC is an agency of the United States that may regulate an entity as a public utility under this section.

found Mariner East 2 is an interstate pipeline; and 3) Sunoco's bond is inadequate.[8] In addition, during the pendency of this appeal, the Pennsylvania Supreme Court rendered its decision in <u>Robinson Township v. Commonwealth</u>, 147 A.3d 536 (Pa. 2016) (<u>Robinson IV</u>), which found Section 3241 of Act 13, 58 Pa. C.S. § 3241, unconstitutional as it relates to the ability of a corporation to take private property for a private purpose. In light of this decision, Condemnees sought to file a supplemental brief to address <u>Robinson IV</u> and its potential impact on this case, which this Court granted. Supplemental briefs were filed by Condemnees and Sunoco on January 12, 2017 and January 27, 2017, respectively. This matter is now ripe for disposition.[9]

As discussed more fully below, the first two issues raised by Condemnees were decided by this Court in <u>Sunoco I</u>, which involved three appeals from the order of the Court of Common Pleas of Cumberland County overruling Preliminary Objections to Declarations of Taking filed by Sunoco to facilitate construction of the Mariner East 2 pipeline. As in the case at bar, condemnees in <u>Sunoco I</u> asserted that the common pleas court erred because no public need existed for the Mariner East 2 pipeline and Sunoco's Declaration was barred under the doctrine of collateral estoppel by the earlier York County decision in <u>Loper</u> and therefore the Mariner East 2 pipeline was not an intrastate pipeline subject to PUC

---

[8] Condemnees did not reference the adequacy of the bond posted by Sunoco in their 1925(b) Statement.

[9] Aside from the parties, numerous other entities filed briefs as amici curiae, including the Clean Air Council (CAC), PUC, and Association of Oil Pipelines (AOPL). CAC's arguments generally align with Condemnees' argument that there is no public need for the project. PUC argues its prior determinations, which resulted in the issuance of CPCs, are final and binding on the public need issue, and therefore are not subject to collateral attack. AOPL urges that FERC and PUC exercise concurrent jurisdiction over the project, which is consistent with nationwide practice.

10

regulation. The record made before common pleas in the case at bar contains virtually the same testimony by Sunoco witnesses and the same exhibits germane to the Mariner East Project, including PUC's Orders, as in the record in Sunoco I. Because our recent *en banc* decision in Sunoco I controls our analysis of those issues common to both sets of appeals, we will begin with a brief discussion of Sunoco I.

## II.    Sunoco I

In Sunoco I, condemnees therein asserted that the Mariner East 2 pipeline was not an intrastate pipeline subject to PUC regulation. However, based on our review of the record, including PUC Orders related to the Mariner East Project, FERC's decision in Amoco Pipeline, Co., 62 F.E.R.C. ¶ 61119, at 61803-61804, 1993 WL 25751, at *4 (Feb. 8, 1993) (finding that "the commingling of oil streams is not a factor in fixing jurisdiction under the [Interstate Commerce Act (ICA)]"), and other related authority,[10] we concluded that the service to be provided by the

---

[10] See also National Steel Corp. v. Long, 718 F. Supp. 622, 625 (W.D. Mich. 1989) (holding in a prospective challenge to the exercise of regulatory jurisdiction by the Michigan Public Service Commission that the federal scheme under the ICA "is not so comprehensive as to address the local interests which are the focus of state regulation."); Humble Oil & Refining Co. v. Tex. & Pac. Ry. Co., 289 S.W.2d 547 (Tex. 1955) (where shipper produced oil in New Mexico and Texas and delivered it by pipeline to a Texas tank farm where it was commingled and shipped by rail to various destinations, the shipper accepting at destination the equivalent of oil delivered to farm, that portion of oil shipped which was equivalent in volume to that produced in New Mexico was subject to interstate rate, while that portion equivalent in volume to that produced in Texas was subject to intrastate rate.); Removing Obstacles to Increased Elec. Generation & Natural Gas Supply in the W. United States, 94 F.E.R.C. ¶¶ 61272, 61977 (Mar. 14, 2001) (FERC authority limited to regulating terms and rates of interstate shipments on a proposed line).

*(Continued…)*

Mariner East 2 pipeline will involve both interstate service (subject to FERC regulation)[11] and intrastate service (subject to PUC regulation). Sunoco I, 143 A.3d at 1004-05. On that basis we held that Sunoco is a public utility corporation empowered to exercise eminent domain under the BCL. Id. at 1016.[12]

---

Sunoco I, 143 A.3d at 1005.

[11] See, e.g., 42 U.S.C. § 7155; 42 U.S.C. § 7172(b) (transferring authority conferred by ICA upon the Interstate Commerce Commission (ICC) to regulate pipeline transportation of oil to FERC); 49 U.S.C. § 60502 (regarding FERC jurisdiction over rates for the transportation of oil by pipeline formerly vested in the ICC). According to its website, FERC is an independent agency that among other duties regulates the interstate transmission of electricity, natural gas and oil. The website further notes that many areas beyond FERC's jurisdiction are within the province of state public utility commissions. Federal Energy Regulatory Commission, What FERC Does, available at http://ferc.gov/about/ferc-does.asp (last visited [May 11, 2017]).

Sunoco I, 143 A.3d at 1004 n.5.

[12] Earlier in Sunoco I, we reviewed the regulation of public utilities by PUC and by FERC and stated that:

Jurisdiction over the certification and regulation of public utilities in the Commonwealth is vested in PUC through the Public Utility Code (Code).[] However, simply being subject to PUC regulation is insufficient for an entity to have the power of eminent domain. Section 1104 of the Code, 66 Pa. C.S. § 1104, requires that a public utility must possess a [CPC] issued by PUC pursuant to Section 1101 of the Code, 66 Pa. C.S. § 1101, before exercising the power of eminent domain.[]

Both FERC and PUC regulate the shipments of natural gas and petroleum products or service through those pipelines, and not the actual physical pipelines conveying those liquids. [] FERC's jurisdiction is derived from the [ICA] and applies to **interstate** movements,[] while the Code and PUC's jurisdiction apply to **intrastate** movements.[] This jurisdiction is not mutually exclusive. See, e.g., Amoco Pipeline, Co., 62 F.E.R.C. ¶ 61119, at 61803-61804, 1993 WL 25751, at *4 (Feb. 8, 1993) (finding that "the commingling of oil streams is not a factor in fixing jurisdiction under the ICA"); [] . . . .

*(Continued…)*

The Sunoco I condemnees also argued that the Mariner East 2 pipeline did not provide service regulated by PUC because PUC's Orders did not cover service on the Mariner East 2 pipeline and PUC did not issue a CPC for Mariner East 2 because it provides interstate commerce. In Sunoco I, we reviewed the same PUC's orders and tariffs contained in the record in this matter and found as follows:

> The record reflects that Sunoco, on June 9, 2014, applied to PUC to expand its service territory for the Mariner East Project, including Mariner East 2, into Washington County, the only service territory not previously certificated for Mariner East service by prior CPCs. By Order dated August 21, 2014, PUC granted the application authorizing Sunoco's provision of intrastate petroleum and refined petroleum products pipeline transportation service in Washington County thus expanding Sunoco's service territory for its Mariner East service. PUC's Order accompanying the CPC described the authorized service, and specifically described Mariner East 2 service as an expansion of existing Mariner East 1 service. The result of this Order is that PUC authorized Mariner East 1 and Mariner East 2 intrastate service in 17 counties, from Washington County in western Pennsylvania, through 15 other counties . . . to Delaware County in eastern Pennsylvania.
>
> Subsequently, in its October 29, 2014 Order, PUC stated that:

Sunoco I, 143 A.3d at 1003-04 (footnotes and record citations omitted.) From this we concluded that:

> . . . it is apparent from these authorities that it is PUC, and not FERC, that has authority to regulate intrastate shipments. Similarly, the record shows that pipeline service operators in Pennsylvania, such as Sunoco, can be, and frequently are, simultaneously regulated by both FERC and PUC through a regulatory rubric where FERC jurisdiction is limited only to interstate shipments, and PUC's jurisdiction extends only to intrastate shipments. []

Id. at 1005 (record citation omitted.)

13

[T]his authority [under existing CPCs] is not limited to a specific pipe or set of pipes, but rather, includes both the upgrading of current facilities and the expansion of existing capacity as needed for the provision of the authorized service within a certificated territory.

From these PUC Orders we conclude that Sunoco's CPCs apply to both Mariner East 1 service and to Mariner East 2 service, as it is an authorized expansion of the same service. In addition, Sunoco's approved tariffs proposed to add the new origin point of Houston, Washington County for west-to-east intrastate movements of propane, based on the CPCs issued. On these bases, we hold that common pleas did not err when it concluded that "PUC regulates intrastate shipments of NGL[s,]" including service provided by Mariner East 2, and that "[a]s a result, [Sunoco] has the power of eminent domain to condemn property for the construction of [Mariner East 2]." (December 22, 2015 Op. at 4.)

Sunoco I, 143 A.3d at 1016-17 (emphasis and record citations omitted.)

The Sunoco I condemnees next argued that Sunoco failed to demonstrate a public need for the Mariner East 2 pipeline before the Cumberland County court. The condemnees argued that PUC approval of a service is only a preliminary step, and it was the responsibility of the common pleas court in an eminent domain proceeding to review the public need and to make a determination of the scope and validity of the condemnation for the Mariner East 2 pipeline. Id. at 1017.

As to the PUC's jurisdiction, we stated:

the [Public Utility] Code [(Code)] charges PUC with responsibility to determine which entities are public utilities and to regulate how public utilities provide public utility service. This has long been the statutory mandate. See, e.g., Pottsville Union Traction Co. v. Pennsylvania Public Service Comm'n, 67 Pa. Super. 301 (1917). It is beyond purview that the General Assembly intended PUC to have statewide jurisdiction over public utilities and to foreclose local public utility regulation. Duquesne Light Co. v. Monroeville Borough, 298 A.2d 252 (Pa. 1972).

14

As previously described, in the public utility context, an entity must meet separate but related requirements set forth in both the BCL and the Code to be a public utility corporation clothed with the power of eminent domain. Section 1511(a)(2) of the BCL provides that "public utility corporations" may exercise the power of eminent domain to condemn property for the transportation of, *inter alia*, natural gas and petroleum products. Section 1103 of the BCL defines public utility corporation as "[a]ny domestic or foreign corporation for profit that . . . is subject to regulation as a public utility by the [PUC] . . . ." 15 Pa. C.S. § 1103. Section 1104 of the Code requires that a public utility must possess a CPC issued by PUC pursuant to Section 1101 of the Code before exercising eminent domain. While courts of common pleas have jurisdiction to review whether an entity attempting to exercise eminent domain power meets the BCL criteria, that jurisdiction does not include the authority to revisit PUC adjudications. A CPC issued by PUC is prima facie evidence that PUC has determined that there is a public need for the proposed service and that the holder is clothed with the eminent domain power. This Court has stated "[t]he administrative system of this Commonwealth would be thrown into chaos if we were to hold that agency decisions, reviewable by law by the Commonwealth Court, are also susceptible to collateral attack in equity in the numerous common pleas courts." Aitkenhead v. Borough of West View, 442 A.2d 364, 367 n.5 (Pa. Cmwlth. 1982).

Sunoco I, 143 A.3d at 1017-18.

We next examined the role of common pleas courts under the Eminent Domain Code,[13] which governs process and procedure in condemnation proceedings, and stated that:

The Eminent Domain Code does not permit common pleas to review the public need for a proposed service by a public utility that has been authorized by PUC through the issuance of a CPC. In Fairview Water Co. v. [Pa.] Public Utility Comm'n, 502 A.2d 162 ([Pa.] 1985), our Supreme Court discussed the proper forum for a condemnee's challenge to the legality of a taking when a public utility attempts to condemn an easement and PUC has determined that condemnee's property is necessary for the utility service. The case stemmed from a dispute between Fairview and a power company over the power

---

[13] 26 Pa. C.S. §§ 101-1106.

15

company's continuing use of an easement previously agreed to by the parties. Id. at 163. The power company filed an application with PUC requesting a finding and determination that its transmission line was necessary and proper for the service, accommodation, convenience, or safety of the public. A PUC Administrative Law Judge determined that the service was necessary and proper and also determined the scope and validity of the easement. This court affirmed. On appeal, Fairview argued that PUC lacked jurisdiction to determine the scope and validity of the easement. Id. at 163-64. The Supreme Court agreed and stated: "[o]nce there has been a determination by the PUC that the proposed service is necessary and proper, the issues of scope and validity and damages must be determined by a Court of Common Pleas exercising equity jurisdiction." Id. at 167. As Sunoco here holds CPCs issued by PUC and PUC in its Orders issuing the CPCs found the authorized service to be necessary and proper, it is left to common pleas to evaluate scope and validity of the easement, but not the public need.

As illustrated by Fairview, determinations of public need for a proposed utility service are made by PUC, not the courts. Section 1103 of the Code requires an applicant for a CPC to establish that the proposed service is "necessary or proper for the service, accommodation, convenience, or safety of the public." 66 Pa. C.S. § 1103(a). Under this section, the applicant must "demonstrate a public need or demand for the proposed service . . . ." Chester Water Auth. v. [Pa.] Public Utility Comm'n, 868 A.2d 384, 386 ([Pa.] 2005) (emphasis added).[]

Sunoco I, 143 A.3d at 1018-19 (footnote and emphasis omitted.)

Specific to PUC Orders issued regarding the Mariner East project, we noted that PUC's July 24, 2014 Order found that the intrastate pipeline service proposed by Sunoco would result in "numerous potential public benefits" by allowing Sunoco "to immediately address the need for uninterrupted deliveries of propane in Pennsylvania and to ensure that there is adequate pipeline capacity to meet peak demand for propane during the winter heating season." Id. at 1019. We noted further that in its August 21, 2014 Order authorizing the provision of intrastate

16

petroleum and refined petroleum products pipeline transportation service in Washington County, PUC stated that:

> [W]e believe that approval of this Application is *necessary and proper for the service, accommodation, and convenience of the public*. We believe granting Sunoco authority to commence *intrastate transportation of propane* in Washington County will enhance delivery options for the transport *of natural gas and natural gas liquids in Pennsylvania*. In the wake of the propane shortage experienced in 2014, Sunoco's proposed service will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, *ensuring that Pennsylvania's citizens enjoy access to propane heating fuel*. Additionally, the proposed service will offer a safer and more economic transportation alternative for shippers to existing rail and trucking services.

Id.

We held that "there is no basis for a common pleas court to review a PUC determination of public need," and that "to allow such review would permit collateral attacks on PUC decisions and be contrary to Section 763 of the Judicial Code, 42 Pa. C.S. § 763, which places review of PUC decisions within the jurisdiction of this Court." Sunoco I, 143 A.3d at 1019.

Finally, as in the case at bar, condemnees in Sunoco I argued that Sunoco's declarations of taking were barred by collateral estoppel based on the York County Court of Common Pleas' decision in Loper. At issue in Loper was whether Sunoco satisfied the definition of "public utility corporation" in the BCL, as a result of the regulation of its interstate service by FERC. At the time Loper was decided, Sunoco had not yet sought or obtained PUC approval to provide intrastate service. The Loper court addressed only whether Sunoco was a public utility corporation because it was subject to regulation as a public utility by an officer or agency of the United States, *i.e.*, FERC, and did *not* decide whether Sunoco was a

17

public utility corporation because it was subject to regulation as a public utility by PUC. The record in <u>Sunoco I</u> showed that, subsequent to the <u>Loper</u> decision and after the polar vortex in 2013-14, Sunoco repurposed Mariner East 2 to be both an *interstate* pipeline, as well as an *intrastate* pipeline subject to PUC regulation. Sunoco filed its declarations of taking in Cumberland County as a public utility corporation subject to regulation as a public utility by PUC. As the question before the Cumberland County court and on appeal to this Court was whether Sunoco was subject to regulation as a public utility by PUC because the Mariner East 2 pipeline was also an intrastate service, we concluded that the issue decided in <u>Loper</u> was not the same as in <u>Sunoco I</u>, and hence that collateral estoppel did not bar Sunoco's declarations of taking. <u>Sunoco I</u>, 143 A.3d at 1014-15; <u>see</u> <u>Thompson v. Karastan Rug Mills</u>, 323 A.2d 341, 343 (Pa. Super. 1974) (for collateral estoppel to apply, four conditions must be met, the first being that the issue or issue of fact previously determined in a prior action are the same).

### III.   Issues Now Before this Court

As stated above, Condemnees raise a number of issues on appeal, some of which were directly addressed by the Court in <u>Sunoco I</u>, and some of which, although not directly addressed, are still foreclosed by this Court's decision in <u>Sunoco I</u>. We discuss these issues, in turn, below.

### A.   Public Interest/Need and Jurisdiction of Courts of Common Pleas and PUC

Condemnees argue that the Mariner East 2 Pipeline is not in the public interest and that Sunoco's attempted condemnation should be transferred to the PUC for a determination of the public interest and necessity for the pipeline. We

18

addressed the public interest issue in Sunoco I in the context of the assertion that the Cumberland County court should have heard evidence and ruled on the public necessity for the Mariner East 2 pipeline and noted that PUC found in several orders that Sunoco's proposed Mariner East 1 and 2 pipelines would result in public benefits and that it was necessary and proper for the public convenience. As PUC already has concluded that the Mariner East Project would result in public benefits and that it was necessary and proper for the public convenience,[14] Condemnees' assertion that common pleas should have referred the Declaration to the PUC for an evaluation of the public necessity of the Mariner East 2 pipeline is contrary to the record in this matter and to Sunoco I.

As part of a sub-argument related to public need, Condemnees argue that Property Rights Protection Act, 26 Pa. C.S. §§ 201-204, (PRPA) prevents the condemnation of their property because Sunoco is a private corporation seeking to condemn land for private enterprise. However, in Sunoco I, based upon essentially the same record as was before common pleas in this matter, we held that Sunoco is a public utility regulated by PUC.[15] As PRPA expressly exempts a "public utility"

---

[14] Condemnees argue in various ways that Sunoco and/or PUC have failed to establish a "public need" for the Mariner East 2 pipeline. Sunoco argues that this argument was waived as it was not raised in Condemnees' POs. As common pleas discussed public benefit in its opinion in support of its Order, it is not clear that the public need argument is waived. However, we need not decide the waiver issue as we held in Sunoco I that the record established a demonstration of public need. 143 A.3d at 1019-20. Given that the record here is virtually identical to the record in Sunoco I, this record also establishes public need.

[15] To the extent Condemnees argue that common pleas erred when it concluded that the Mariner East 2 pipeline is both an interstate and intrastate service subject to dual regulation by FERC and PUC and/or that the PUC Orders and CPCs cover service of the Mariner East 2 pipeline, those arguments were also previously rejected in Sunoco I, as summarized in Part II, *supra*.

as defined in Section 102 of the Code, 66 Pa. C.S. § 102,[16] from the general prohibition against taking property for "private enterprise,"[17] we conclude that PRPA does not bar Sunoco's Declaration for Condemnees' property and therefore affirm common pleas on this issue.

---

[16] Section 102 of the Code defines public utility as

(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:
* * *
(v) Transporting or conveying natural or artificial gas, crude oil, gasoline, or petroleum products, materials for refrigeration, or oxygen or nitrogen, or other fluid substance, by pipeline or conduit, for the public for compensation.

66 Pa. C.S. § 102.

[17] PRPA Section 204 provides:
Eminent domain for private business prohibited.

(a) Prohibition. --

Except as set forth in subsection (b), the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited.

(b) Exception. --

Subsection (a) does not apply if any of the following apply:

* * *
(2) The property is taken by, to the extent the party has the power of eminent domain, transferred or leased to any of the following:

(i) A public utility or railroad as defined in 66 Pa.C.S. § 102 (relating to definitions).

* * * *

26 Pa. C.S. § 204.

20

Also subsumed in the public need argument is Condemnees' claim that the Pennsylvania Supreme Court's recent decision in <u>Robinson IV</u>, striking down a portion of Act 13 that permitted a corporation to take private property for private purposes as unconstitutional, reaffirms that Sunoco cannot condemn the Condemnees' property absent a finding that the public is the "primary and paramount beneficiary."[18]  Sunoco, on the other hand, argues <u>Robinson IV</u> does not address the legality of eminent domain exercised by public utilities certificated and regulated by the PUC; rather, <u>Robinson IV</u> is limited to private, non-regulated corporations.  We agree.

In <u>Robinson IV</u>, the Pennsylvania Supreme Court examined whether Section 3241 of Act 13, 58 Pa. C.S. § 3241, was constitutional.  Section 3241(a) provides that "'a corporation empowered to transport, sell or store natural gas or manufactured gas in this Commonwealth'" has the right to "'appropriate an interest in real property located in a storage reservoir or reservoir protective area for injection, storage and removal from storage of natural gas or manufactured gas in a stratum which is or previously has been commercially productive of natural gas.'"  <u>Robinson IV</u>, 147 A.3d at 544 (quoting 58 Pa. C.S. § 3241(a)).  The Supreme

---

[18] In their supplemental brief, Condemnees also argue the Environmental Rights Amendment, Pa. Const., art. I, § 27, (ERA), has been violated.  In particular, Condemnees, as well as amicus CAC, argue that the pipeline should not be built until the project has been assessed and permitted by the Commonwealth's resource agencies.  As this argument has never been raised in their POs or their statement of matters complained of on appeal, and because it centers on an injunctive order that was never appealed, we are constrained to agree with Sunoco that the issue is waived.  We note, however, that recently the Department of Environmental Protection recently approved a number of Chapter 105 water obstruction and encroachment permits and Chapter 102 erosion and sediment control (E&S) permits.  <u>See</u> Department of Environmental Protection, <u>Mariner East Pipeline II</u>, available at http://www.dep.pa.gov/Business /ProgramIntegration/Pennsylvania-Pipeline-Portal/Pages/Mariner-East-II.aspx (last visited   May 11, 2017).

Court rejected this Court's interpretation of Section 3241, that the statute only allowed public utilities with a CPC to exercise the power of eminent domain, concluding, instead, that the statute permitted *any* corporation to do so. Id. at 587. It was for this reason that the Supreme Court struck down Section 3241 as unconstitutional on its face.[19]  Importantly, the Supreme Court recognized that public utilities "have long been permitted the right to exercise powers of eminent domain conferred on them by the Commonwealth in furtherance of the overall public good." Id. (citation omitted).

As stated in Sunoco I, and reiterated herein, Sunoco is a PUC-certificated public utility.  As such, the PUC already determined a public purpose exists that permits Sunoco to exercise its eminent domain powers.  See 66 Pa. C.S. § 1103(a) ("A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public.")

It is not for this Court to second guess the PUC's prior determinations.  As the PUC pointed out in its amicus brief, no one, including Condemnees, appealed its prior issuances of CPCs to Sunoco.  Moreover, the time period to challenge

---

[19] The dissent urges that this case be remanded to the trial court to determine the impact, if any, of Robinson IV, as our Court did in Hughes v. UGI Storage Company (Pa. Cmwlth., No. 629 C.D. 2016, filed March 13, 2017) and Albrecht v. UGI Storage Company (Pa. Cmwlth., No. 630 C.D. 2016, filed March 13, 2017).  However, in Hughes and Albrecht, the condemnor's power of condemnation arose from **Section 3241 of Act 13**, which is the very provision that our Supreme Court struck down as unconstitutional in Robinson IV.  Although the would-be condemnors in Hughes and Albrecht also relied on the Code and BCL, unlike Sunoco, here, they were not certificated.  Because Sunoco is a PUC-certificated public utility and its eminent domain powers arise from the Code and BCL, **not Act 13**, the decision in Robinson IV does not impact our analysis.  A remand, therefore, is unnecessary.

22

these determinations has long since passed. Therefore, Condemnees' attempt to challenge these determinations now is not only untimely but an impermissible collateral attack on the PUC's jurisdiction.

We addressed this very issue in Sunoco I, as well, wherein we explained that the Eminent Domain Code does not permit a court to review the public need for a proposed service. 143 A.3d at 1018. We specifically noted that "determinations of public need for a proposed utility service are made by the PUC, not the courts." Id. at 1019 (citing Fairview Water, 502 A.2d 162). We further explained:

> While courts of common pleas have jurisdiction to review whether an entity attempting to exercise eminent domain power meets the BCL criteria, that jurisdiction does not include the authority to revisit PUC adjudications. A CPC issued by PUC is prima facie evidence that PUC has determined that there is a public need for the proposed service and that the holder is clothed with the eminent domain power. This Court has stated "[t]he administrative system of this Commonwealth would be thrown into chaos if we were to hold that agency decisions, reviewable by law by the Commonwealth Court, are also susceptible to collateral attack in equity in the numerous common pleas courts."

Id. at 1018 (quoting Aitkenhead, 442 A.2d at 367 n.5). This is consistent with Supreme Court precedent that urges that an "agency's subsequent determination on the issue, when final, is binding and not subject to collateral attack upon the resumption of judicial proceedings." White v. Conestoga Title Ins. Co., 53 A.3d 720, 728 n.14 (Pa. 2012) (citing Elkin v. Bell Telephone Co. of Pa., 420 A.2d 371, 374 (Pa. 1980)). Simply put, the PUC's determination that there is a public need for the proposed pipeline went unchallenged and therefore controls disposition of this issue.

23

## B. Collateral Estoppel

Condemnees next assert that collateral estoppel applies to bar Sunoco's Declarations based on the York County decision in Loper. However, as it did in Sunoco I, Sunoco presented evidence that, after the decision in Loper, an intrastate component had been added to the Mariner East Project in the form of on-ramps and off-ramps within Pennsylvania thus providing for PUC regulation. Common pleas determined that collateral estoppel did not apply because:

> many relevant events have occurred since the [Loper decision] that compel this Court to consider the issues as undecided. The two main events are: (1) adding on and off ramps within Pennsylvania and (2) the spike in past winter demands. While the proposed pipeline may have been solely interstate in Loper, the intrastate component was subsequently added, which in turn made federal and state agencies regulate the pipeline. The proposed off ramps are a public benefit within Pennsylvania. Condemnor's Ex. 4, p. 8. This Court took judicial notice that Sunoco is a public utility. We could not ignore the relevant events that have occurred after the Loper decision, and collateral estoppel does not bar this Court from deciding this matter.

(Common pleas' Op. at 4-5.) Common pleas' conclusion here is consistent with our holding in Sunoco I that Sunoco's Declarations were not barred by collateral estoppel, and thus there is no error.

## C. Adequacy of Bond Value/Clean and Green Act

Finally, Condemnees argue that Sunoco failed to provide sufficient collateral when it filed its Declaration because their property is enrolled under the "Clean and Green Act," 72 P.S. §§ 5490.1-5490.13.[20] Sunoco argues that this issue was waived as the Condemnees failed to raise it in their POs or at any time before

---

[20] The Pennsylvania Farmland and Forest Land Assessment Act of 1974, Act of December 19, 1974, P.L. 973, as amended, 72 P.S. §§ 5490.1-5490.13.

common pleas, although they challenged the sufficiency of the bond generally.[21] However, they did not address that issue in their Rule 1925 Statement and common pleas did not address it in its opinion in support of the January 6, 2016 Order.

Under Section 3 of the Clean and Green Act, the assessed value of property devoted to certain agricultural uses is reduced. 72 P.S. § 5490.3. Generally, when property enrolled under the Clean and Green Act is conveyed for non-agricultural uses, the property loses its reduced assessment and a roll-back tax is imposed to collect the reduced taxes for the past seven years. Section 6 of the Clean and Green Act, 72 P.S. § 5490.6. However, Section 6 also exempts condemnation from the roll-back tax requirement. 72 P.S. § 5490.6(a.1)(1)(ii), (a.1)(2.1).[22] The Clean and Green Act's implementing regulations at 7 Pa. Code § 137b.85 provide as follows:

> If any portion of a tract of enrolled land is condemned, the condemnation will not trigger liability for roll-back taxes on either the condemned portion of the enrolled land or the remainder. If the condemned portion or the remainder of the enrolled land remains in agricultural use, agricultural reserve or forest reserve, and meets the criteria in section 3 of the act (72 P.S. § 5490.3), preferential assessment shall continue with respect to that condemned portion or remainder.

7 Pa. Code § 137b.85. Therefore, Sunoco's condemnation will not trigger liability for roll-back taxes and, as long as the remainder of the enrolled land continues to

---

[21] We note that common pleas' January 6, 2016 Order in this action states in Paragraph 5 that "The bond posted by Sunoco Pipeline, L.P. is adequate pursuant to the evidence presented." (R.R. at 2*l.*)

[22] Subsection (a.1)(1)(ii) was added by Section 7 of the Act of December 21, 1998, P.L. 1225. Subsection (a.1)(2.1) was added by Section 2 of the Act of October 27, 2010, P.L. 866.

meet the criteria, the Condemnees' property will continue to be preferentially assessed. The adequacy or sufficiency of a bond amount in an eminent domain case is a matter within the trial court's discretion, which will not be disturbed unless there is a manifest abuse of discretion. In re Phila. Parking Auth., 189 A.2d 746, 752, (Pa. 1963); York City Redev. Auth. of City of York v. Ohio Blenders, Inc., 956 A.2d 1052, 1061 (Pa. Cmwlth. 2008); In re City of Scranton, 572 A.2d 250, 256 (Pa. Cmwlth. 1990). We find no error or abuse of discretion in common pleas' decision.

## IV.    Conclusion

Condemnees' appeal as to collateral estoppel, the intrastate nature of Mariner East 2 Service, the applicability of PUC Orders and CPCs to Mariner East 2, and public need are controlled by Sunoco I and common pleas' January 6, 2016 Order is in accord therewith. Robinson IV does not alter this conclusion. Furthermore, Condemnees' assertions that Sunoco's Declaration violates PRPA and the Clean and Green Act are not supported by the law and the record in this case. We therefore affirm common pleas' January 6, 2016 Order.

_____
**RENÉE COHN JUBELIRER,** Judge

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by Sunoco    :
Pipeline L.P. of Permanent and    :
Temporary Rights of Way for the    :
Transportation of Ethane, Propane,    :
Liquid Petroleum Gas, and Other    :
Petroleum Products in the Township    :
of Union, Huntingdon County,    :
Pennsylvania, Over the Lands of    :
Stephen Gerhart and Ellen S. Gerhart    :
    :
Appeal of: Stephen Gerhart and    :    No. 220 C.D. 2016
Ellen S. Gerhart    :

## **O R D E R**

NOW, May 15, 2017, the January 6, 2016 Order of the Court of Common Pleas of Huntingdon County, in the above-captioned matter, is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge

In Re:  Condemnation by Sunoco              :
Pipeline L.P. of Permanent and              :
Temporary Rights of Way for the             :
Transportation of Ethane, Propane,          :
Liquid Petroleum Gas, and Other             :
Petroleum Products in the Township          :
of Union, Huntingdon County,                :
Pennsylvania, Over the Lands of             :
Stephen Gerhart and Ellen S. Gerhart        :
                                            :
Appeal of:  Stephen Gerhart and             :    No. 220 C.D. 2016
Ellen S. Gerhart                            :    Submitted:  September 2, 2016


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                           FILED:  May 15, 2017


          The majority suggests that since Sunoco is deemed to be a public utility, its actions in relation to the taking of one's property are beyond our review. In support of this, the majority cites *Robinson Township v. Public Utility Commission,* 147 A.3d 536, 587 (Pa. 2016)(*Robinson IV*): "Importantly, the Supreme Court recognized that public utilities 'have long been permitted the right to exercise powers of eminent domain conferred on them by the Commonwealth in furtherance of the overall public good.'" *See* Majority, slip op. 22.

          This quote from *Robinson IV,* however, is taken out of context since the Supreme Court was neither establishing nor reaffirming a position suggested by

the majority, but was instead merely outlining the essence of our court's decision in *Robinson Township v. Public Utility Commission,* 96 A.3d 1104 (Pa. Cmwlth. 2014) *(Robinson III)*, (which the Supreme Court was overturning) and doing so with a fair amount of skepticism as to the position we had taken. This is evident in the sentence preceding that which the majority quotes: "The Commonwealth Court … strive[s] mightily to read the language of Section 3241(a) as restricting this taking power to only those corporations which qualify, statutorily, to be public utilities." *Robinson IV*, 147 A.3d at 587. In the present matter this court is again "striving mightily" to interpret something in a way that strains credulity and, I suggest, will face the same fate as our decision in *Robinson IV*.

Our response to *Robinson IV* in this case was to ask for and receive supplemental briefing from the parties on how that decision should be addressed. We should have done more. Recently, in *Hughes v. UGI Storage Company,* (Pa. Cmwlth., No. 629 C.D. 2016, filed March 13, 2017), 2017 WL 962449, and *Albrecht v. UGI Storage Company,* (Pa. Cmwlth., No. 630 C.D. 2016, filed March 13, 2017), 2017 WL 962449, we remanded for development of a record at the trial level on the impact of *Robinson IV*. We should do the same here. Instead, we are issuing a decision on a case submitted without argument before a three judge panel (let alone *en banc*) which implicates one of the most important environmental decisions our Supreme Court has issued in recent times.

The majority, mooring its reasoning to this misread of *Robinson IV*, greatly misses the point. *Robinson IV* represents a watershed moment in our environmental jurisprudence. Environmental considerations are not ancillary nuisances but instead are infused with the constitutional strength the

Environmental Rights Amendment intended. *See* Pa. Const.*,* art. I, § 27.[1] As such, they are to be treated with a heightened seriousness. As I believe the majority misses this opportunity, I must dissent.

_____
JOSEPH M. COSGROVE, Judge

---

[1] We must be attentive to the fact that this matter involves another fundamental constitutional right, namely, the freedom from the taking of one's private property. *See In Re: Sunoco Pipeline, L.P.*, 143 A.3d 1000, 1020 (Pa. Cmwlth. 2016)(Brobson, J., dissenting)("Private property rights have long been afforded especial protection in this Commonwealth. For that reason, the law of our Commonwealth requires that courts closely scrutinize the exercise of eminent domain.")

JMC-3